# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **STATE OF NEW YORK, et al.,**<br><br>        **Plaintiffs,**<br><br>    **v.**<br><br>**TOWN OF CLARKSTOWN, et al.,**<br><br>        **Defendants.** | **CIVIL NO. 11-CV-0293 (KMK/LMS)**<br><br>**THIRD-PARTY COMPLAINT** |
| **CLARKSTOWN LANDFILL JOINT DEFENSE GROUP,**<br><br>        **Third-Party Plaintiff,**<br><br>    **v.**<br><br>**AM COSMETICS CORP.; MARKWINS INTERNATIONAL CORP.; AALBORG INSTRUMENTS & CONTROLS, INC.; ALCATEL-LUCENT USA INC.; ALSTOM INC.; AMERICAN IMPERIAL SCREW CORP.; ARISTO IMPORT CO., INC.; ARRI INC.; BALFOUR BEATTY; BEL-BEE PRODUCTS, INC.; BOROUGH OF NORTHVALE, NEW JERSEY; C&A CARBONE, INC.; CVS CAREMARK CORP.; CADIE PRODUCTS CORP.; CAPASSO CARTING CO., INC.; ADVANCED DISPOSAL SERVICES, INC.; CARLO MINUTO CARTING CO. INC.; CLARKSTOWN CARTING CO., INC.; CORNETTA'S RESTAURANT & MARINA INC.; DAIRYLEA COOPERATIVE INC.; DAMIANI SANITATION, INC.; DEVELOPMENT ENTERPRISES, INC.; EAST RAMAPO CENTRAL SCHOOL DISTRICT; EASTMAN CHEMICAL CO.; EDROY PRODUCTS CO., INC.; FRANK CAPASSO, INC.; FRANK FRONTINO WRECKING CO., INC.; FRANK J. TUCEK & SONS, INC.; FRANK VALERIO GENERAL CONTRACTING CORP.; GABRIEL MANUFACTURING CO.; GENERAL BEARING CORP.; GETTY PROPERTIES CORP.; H. PFANSTIEL HARDWARE CO., INC.; HEDWIN CORP.; HELMER-CRONIN** | |

CONSTRUCTION, INC.; HILTRONICS CORP.;
HUHTAMAKI, INC.; ILLINOIS TOOL
WORKS INC.; INERTIA SWITCH, INC.;
INTERNATIONAL ADVANCED MATERIALS,
INC.; INTERNATIONAL BUSINESS
MACHINES CORP.; INTERSTATE WASTE
SERVICES INC.; IRA D. CONKLIN & SONS,
INC.; CONKLIN SERVICES &
CONSTRUCTION INC.; JOMAR INDUSTRIES
INC.; JULIUS PETERSEN BOATYARD;
KENNETH HIEP, INC.; LARSON-
METERCRAFT INC.; LECROY CORP.;
TELEDYNE LECROY, INC.; LOUIS
HORNICK & CO.; MACHIDA AMERICA INC.;
VISION-SCIENCES, INC.; MACY'S EAST,
INC.; MANCUSO CONSTRUCTION &
REMODELING CORP.; MATERIALS
RESEARCH CORP.; PRAXAIR SURFACE
TECHNOLOGIES, INC.; MIELE SANITATION
CO.; MONSEY CARTING CO., INC.; OMNI
WASTE SERVICES, INC.; OPTICON, INC.;
PSC, LLC; PAR PHARMACEUTICAL, INC.;
PAT NAZZARO DISPOSAL, INC.; PERILLO
SANITATION CO., INC.; ANTHONY
CARTING, INC.; PLASTIC-CRAFT
PRODUCTS CORP.; REXEL INC.;
ROCKLAND COUNTY IRON WORKS, INC.;
ROCKLAND INSULATED WIRE & CABLE
CO.; ROSSI TOOL & DIES, INC.; SETH
GLASSER & CO.; SCHULTZ FORD LINCOLN
INC.; SOLITRON DEVICES, INC.; STAR KAY
WHITE, INC.; SWIVELIER CO., INC.; THE
TJX COMPANIES, INC.; TAPPAN WIRE &
CABLE, INC.; TELE-VUE OPTICS, INC.; TRI-
SEAL INTERNATIONAL INC.; TRI-SEAL
HOLDINGS, INC.; TEKNI-PLEX, INC.;
TRIPLE G CONSTRUCTION CORP.; U.S.
POLYCHEMICAL CORP.; USG CORP.;
UNITED ROCKLAND STAIRS CO.; UTILITY
ENGINEERING CO.; VILLAGE OF SOUTH
NYACK, NEW YORK; VILLAGE OF
SUFFERN, NEW YORK; VILLAGE OF
TARRYTOWN, NEW YORK; W. HARRIS &
SON, INC.; WARD PAVEMENTS, INC.; and
XEROX CORP.,

**Third-Party Defendants.**

## THIRD-PARTY COMPLAINT

For its Third-Party Complaint, Third-Party Plaintiff Clarkstown Landfill Joint Defense Group ("Clarkstown Landfill JDG"), by and through counsel, states and alleges as follows:

### STATEMENT OF THE CASE

1.        This is a civil action pursuant to the provisions of the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C. § 9601 *et seq.* ("CERCLA").  As a result of the disposal of the combination of municipal solid waste, commercial waste and industrial waste, there has been a release and/or threat of release of hazardous substances from a facility known as the Clarkstown Landfill Site located in the Hamlet of West Nyack in the Town of Clarkstown, County of Rockland, State of New York (hereinafter "Site").  These hazardous substances have contaminated the soil and groundwater at and in the vicinity of the Site and have threatened the public health and the environment.  Each of the Third-Party Defendants generated and/or transported hazardous substances that were disposed of at the Site.

2.        The Clarkstown Landfill JDG seeks contribution from each Third-Party Defendant pursuant to Sections 107(a) and 113(f) of CERCLA, 42 U.S.C. §§ 9607(a) and 9613(f), and pursuant to common law, for past and future response costs which the Clarkstown Landfill JDG has paid and may pay in the future at the Site, along with a declaration as to each Third-Party Defendant's liability and an allocation of past and future response costs among all parties.

### JURISDICTION AND VENUE

3.        This Court has jurisdiction over the subject matter of this action pursuant to Sections 107(a) and 113(b) of CERCLA, 42 U.S.C. §§ 9607(a) and 9613(b), providing

jurisdiction over controversies arising under CERCLA; and pursuant to 28 U.S.C. § 1331, providing for jurisdiction over controversies involving federal questions of law.

4.      Venue is proper in this district pursuant to Sections 107(a) and 113(b) of CERCLA, 42 U.S.C. §§ 9607(a) and 9613(b), and 28 U.S.C.§§ 1391(b) and (c), because the release or threatened release of hazardous substances occurred at or from the Site located in this judicial district.

## FACTUAL BACKGROUND

5.      The Site was an operating municipal landfill from the 1950s through 1990, which received a combination of municipal solid waste, commercial waste and industrial waste from a five-mile radius around the Site as well as other areas outside such five-mile radius.  In addition, waste from the Ramapo Transfer Station was transported and disposed of at the Site after the Ramapo Landfill was closed.

6.      Settling Defendant Town of Clarkstown ("Town") owned and operated the Site from the 1950s through 1990 and there was a release or releases of hazardous substances at or from the Site during the time the Town owned and/or operated the Site.

7.      Pursuant to Environmental Conservation Law ("ECL") § 27-1305, the Site was listed on the State's Registry of Inactive Hazardous Waste Disposal Sites based on the release of hazardous substances at and from the Site.

8.      The Town and NYSDEC entered into a Consent Order that required the Town to undertake the remedial actions required by the Record of Decision ("ROD") for the Site.

9.      NYSDEC and the Town entered into a State Assistance Contract ("SAC") (No. C300058) pursuant to the Environmental Quality Bond Act of 1986, whereby the State agreed to reimburse the Town for 75% of the eligible costs for investigation, remedial design, and

construction of the remedial action and construction oversight to be incurred by the Town at the Site.

10.     The Town implemented response measures at the Site to remedy the alleged release and/or threatened release of hazardous substances into the environment, and incurred response costs which have been reimbursed by the State, including, but not limited to, costs of investigation, removal, remedial activity, and operation and maintenance, as those terms are defined or used in Sections 101(23), 101(24), 101(25), 107(a) and 113 of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601(23), 9601(24), 9601(25), 9607(a) and 9613, in relation to the Site.

11.     On March 21, 2011, after several years of negotiations, a Consent Decree between the State, Town and the Clarkstown Landfill JDG (and its assignors) ("Clarkstown Landfill Consent Decree") was entered in this cause (Doc. 4).

12.     On January 23, 2012, the First Modification to the Clarkstown Landfill Consent Decree was entered in this cause (Doc. 11), which added several more entities as Settling Defendants to the Clarkstown Landfill Consent Decree, and which reduced the amount the Settling Defendants, including the Clarkstown Landfill JDG and its assignors but not including the Town, were required to pay to the State under the Consent Decree from $4,000,000 to $3,750,000 to account for the addition of several State entities as signatories to the Consent Decree.

13.     Under the Clarkstown Landfill Consent Decree, the Settling Defendants, including the Clarkstown Landfill JDG and its assignors, but not including the Town, have paid three installment payments totaling $3,750,000 to the State to settle the State's claims at the Site.

14.     The Clarkstown Landfill JDG has also incurred and will continue to incur additional recoverable response costs, including attorney's fees and expenses that are closely tied to the response actions at the Site.

## THE PARTIES

15.     The members of the Clarkstown Landfill JDG are Allied Waste North America Inc., for itself and its subsidiaries, including, without limitation, American Disposal Services of New Jersey, Inc. and BFI Waste Systems of New Jersey, Inc., and insofar as it and its subsidiaries are alleged to be a successor to Vincent Ippolito, Inc. and Round Lake Sanitation Corp.; Barr Laboratories, Inc.; Becton Dickinson and Co.; Chromalloy New York, Div. of Chromalloy Gas Turbine Corp.; Clarkstown Central School District; Consolidated Rail Corp.; County Asphalt, Inc.; County of Rockland Highway Dept.; Evonik Corporation, as successor to Dynamit Nobel of America; Fisher Scientific Co. LLC; Ford Motor Co.; Gannett Satellite Information Network, Inc., d/b/a The Journal News; International Paper Co.; Momentive Specialty Chemicals, Inc. (f/k/a Borden Chemical, Inc.); Nyack Hospital; Orange and Rockland Utilities, Inc.; Pfizer Inc. for itself and it subsidiaries including, without limitation, Wyeth Holdings Corp. acting through Wyeth Pharmaceuticals (Lederle Laboratories); Rockland County Sewer District No. 1; Sanitary Waste Carriers, Inc.; Thomas Milo, as indemnitor to Suburban Carting Corp.; Town of Orangetown, New York; United Water New Jersey Inc.; United Water New York Inc.; Waste Management of New York, LLC and Marangi Bros., Inc.; and Wikoff Color Corporation.

16.     Each of the members of the Clarkstown Landfill JDG is a Settling Defendant in this cause and a signatory to the Clarkstown Landfill Consent Decree.

17.     The Clarkstown Landfill JDG is also the assignee of the all federal, state, local

and common law claims in connection with the Site from the following Settling Defendants in this cause, who are also signatories to the Clarkstown Landfill Consent Decree:  AmerTac for itself and AmerTac Holdings, Inc., American Tack & Hardware Co., Inc. and AT&H Co., Inc.; Avery Dennison Corporation; Avon Products, Inc.; Borough of Ringwood, New Jersey; Cosco Industries Inc.; Holt Construction Corporation; Innovative Plastics Corporation; J. Fletcher Creamer & Son, Inc.; Martin Marietta Materials, Inc.; Metal Improvement Co., LLC (f/k/a Metal Improvement Co., Inc.); Metropolitan Vacuum Cleaner Co. Inc.; Nanuet Union Free School District; Nestle Waters North America Inc.; New York State Department of Transportation; New York State Division of Military and Naval Affairs and New York National Guard; New York State Office of Mental Health; New York State Thruway Authority and Canal Corporation; Nice-Pak Products, Inc.; Novartis Corporation (f/k/a Ciba-Geigy Corporation); Nyack Union Free School District; Palisades Interstate Park Commission and New York State Office of Parks, Recreation, and Historic Preservation; Pearl River School District; Pearson Education, Inc. (f/k/a Prentice Hall, Inc.); Plasti-Clad Metal Products, Inc.; Pulsafeeder, Inc.; Ramapo Central School District; Sears, Roebuck and Co.; South Orangetown Central School District; Thalle Construction Co.; Town of Greenburgh, New York; Town of Ramapo, New York; Uneeda Enterprizes, Inc.; Vale Inco Americas Inc.; Verizon New York Inc.; Village of Ardsley, New York; Village of Dobbs Ferry, New York; Village of Elmsford, New York; Village of Hastings-on-Hudson, New York; Village of Irvington, New York; Village of Nyack, New York; Village of Piermont, New York; Village of Spring Valley, New York; Village of Upper Nyack, New York; Volkswagen Group of America, Inc.; Volvo Cars of North America, LLC; and Warriner Smith Utilities, Inc.

      18.    Third-Party Defendant AM Cosmetics Corp. ("AM Cosmetics") is the successor

to Pavion Ltd. ("Pavion"), a manufacturer and distributor of cosmetic products including, but not limited to, lipstick, face powder and nail lacquer, who generated waste streams containing hazardous substances that were disposed of at the Site by Third-Party Defendant C&A Carbone, Inc. ("C&A Carbone"), among other haulers.

19.     In addition, Pavion selected the Site for disposal and transported and disposed of its own waste streams containing hazardous substances at the Site.

20.     Pavion operated a facility within five miles of the Site, located at 60 Cedar Hill Avenue in Nyack, New York, from at least 1983 through at least 1990.

21.     Pavion operated another facility within five miles of the Site, located at 70 Cedar Hill Avenue in Nyack, New York, from at least 1983 through at least 1990.

22.     Pavion operated another facility within five miles of the Site, located at 149-157 Burd Street in Nyack, New York.

23.     Pavion operated another facility within five miles of the Site, located at Route 303 & Glenshaw Street in Orangetown, New York.

24.     Pavion is listed on the User's List for the Site as an entity who used the Site to dispose of waste.

25.     Upon information and belief, Pavion's waste streams consisted of waste from the manufacturing of cosmetics and perfumes including, but not limited to, cafeteria waste, cleaning solution, hydraulic oil, ignitable spent parts, ignitable and/or toxic off-specification cosmetics, industrial solvents, lacquer samples, maintenance waste, a mixture of castor oil and cosmetic colors, nail enamel office waste, oil based up lip gloss, packaging waste and petroleum naptha, which likely contained hazardous substances such as acetone, benzene, cadmium, dichloroethylene, lead, methyl ethyl ketone, perchloroethylene, toluene, trichloroethane,

trichloroethylene, vinyl chloride, xylenes and/or zinc.

26.      By letter dated March 17, 2010, the Clarkstown Landfill JDG demanded that AM Cosmetics pay its equitable share of response costs pursuant to Sections 107(a) and 113(f)(1) of CERCLA and common law.

27.      To date, AM Cosmetics has not paid its equitable share of Site response costs.

28.      Alternatively, Markwins International Corp. ("Markwins") is the successor to Pavion and is responsible for the waste streams attributable to Pavion, as alleged in paragraph no. 25 above.

29.      To date, Markwins has not paid its equitable share of Site response costs.

30.      Third-Party Defendant Aalborg Instruments & Controls, Inc. ("Aalborg") is a manufacturer of industrial flow meters, controllers and valves, who generated waste streams containing hazardous substances that were disposed of at the Site.

31.      Aalborg operated a facility within five miles of the Site, located at 382 Route 59, Tall Pines Industrial Park, Section 292, in Monsey, New York.

32.      Upon information and belief, Aalborg's waste streams consisted of aluminum, brass and stainless steel, electrical component waste, maintenance waste, metal fabrication waste, metal finishing waste, office waste and packaging waste, which likely contained hazardous substances such as acetone, aluminum, benzene, cadmium, chromium, copper, dichloroethylene, lead, manganese, methyl ethyl ketone, methylene chloride, nickel, perchloroethylene, toluene, trichloroethane, trichloroethylene, xylenes and/or zinc.

33.      By letter dated May 18, 2009, the Clarkstown Landfill JDG demanded that Aalborg pay its equitable share of response costs pursuant to Sections 107(a) and 113(f)(1) of CERCLA and common law.

34.     To date, Aalborg has not paid its equitable share of Site response costs.

35.     Third-Party Defendant Alcatel-Lucent USA Inc. ("Alcatel-Lucent") is the successor to Western Electric Company, Inc. ("Western Electric"), a manufacturer of communications equipment who generated waste streams containing hazardous substances that were disposed of at the Site by Rockland Cartage Co ("Rockland Cartage").

36.     Western Electric operated a facility located at 22 Hemion Road in Suffern, New York, from at least 1977 through at least 1990.

37.     Western Electric operated a facility located at 6 Dunnigan Drive in Suffern, New York, from at least 1977 through at least 1990.

38.     Rockland Cartage transported waste from one or both Western Electric facilities in Suffern and disposed of such waste at the Site, which waste was contained in one to two 15- to 20-cubic yard containers picked up at least once per week, or more often if the containers were filled earlier in any given week.

39.     Upon information and belief, Western Electric's waste streams consisted of cafeteria waste, maintenance waste, office waste, packaging material, packaging waste and wire spools, which likely contained hazardous substances such as acetone, benzene, cadmium, dichloroethylene, lead, methyl ethyl ketone, methylene chloride, perchloroethylene, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylenes and/or zinc.

40.     By letter dated May 25, 2009, the Clarkstown Landfill JDG demanded that Alcatel-Lucent pay its equitable share of response costs pursuant to Sections 107(a) and 113(f)(1) of CERCLA and common law.

41.     To date, Alcatel-Lucent has not paid its equitable share of Site response costs.

42.     Third-Party Defendant Alstom Inc. ("Alstom") is the successor to Entrelec Inc.

("Entrelec"), a manufacturer of electrical terminals, rotary cam switches, and indicator and light switches, who generated waste streams containing hazardous substances that were disposed of at the Site.

43.    Entrelec operated a facility located at 2 Ram Ridge Road in Spring Valley, New York, from at least 1984 through 1989.

44.    Upon information and belief, Entrelec's waste streams consisted of electrical component waste, maintenance waste, metal fabrication waste, metal finishing waste, office waste, packaging waste and transportation wastes, which likely contained hazardous substances such as acetone, benzene, cadmium, chromium, copper, dichloroethylene, ethyl benzene, lead, manganese, methyl ethyl ketone, methylene chloride, nickel, perchloroethylene, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylenes and/or zinc.

45.    To date, Alstom has not paid its equitable share of Site response costs.

46.    Third-Party Defendant American Imperial Screw Corp. ("American Imperial") is a tool and die manufacturer who generated waste streams containing hazardous substances that were disposed of at the Site.

47.    American Imperial operated a facility located at 245 Quaker Road in Pomona, New York, from at least 1986 to at least 1990.

48.    Upon information and belief, American Imperial's waste streams consisted of maintenance waste, metal fabrication waste, office waste and packaging waste, which likely contained hazardous substances such as acetone, benzene, cadmium, chromium, copper, dichloroethylene, lead, manganese, methyl ethyl ketone, methylene chloride, nickel, perchloroethylene, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylenes and/or zinc.

49.     By letter dated May 18, 2009, the Clarkstown Landfill JDG demanded that American Imperial pay its equitable share of response costs pursuant to Sections 107(a) and 113(f)(1) of CERCLA and common law.

50.     To date, American Imperial has not paid its equitable share of Site response costs.

51.     Third-Party Defendant Aristo Import Co., Inc. ("Aristo") is a manufacturer of stopwatches, pulse meters, clocks and pedometers, who generated waste streams containing hazardous substances that were disposed of at the Site by Third-Party Defendant Kenneth Hiep, Inc. ("Kenneth Hiep").

52.     Aristo operated a facility within five miles of the Site, located at 85 Hunt Road in Orangeburg, New York, from at least 1933 until 1986.

53.     Aristo operated another facility, located within five miles of the Site, located at 15 Hunt Road in Orangeburg, New York, from at least 1986 through at least 1990.

54.     Upon information and belief, Aristo's waste streams consisted of cafeteria waste, electrical component waste, maintenance waste, metal fabrication waste, office waste and packaging waste, which likely contained hazardous substances such as acetone, benzene, cadmium, chromium, copper, dichloroethylene, lead, manganese, methyl ethyl ketone, methylene chloride, nickel, perchloroethylene, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylenes and/or zinc.

55.     By letter dated May 18, 2009, the Clarkstown Landfill JDG demanded that Aristo pay its equitable share of response costs pursuant to Sections 107(a) and 113(f)(1) of CERCLA and common law.

56.     To date, Aristo has not paid its equitable share of Site response costs.

57.     Third-Party Defendant Arri Inc. ("Arri") is the successor to and/or was formerly

known as Arriflex Corp. ("Arriflex"), a manufacturer of wholesale photographic equipment and supplies, who generated waste streams containing hazardous substances that were disposed of at the Site.

58.     Arriflex operated a facility within five miles of the Site, located at 500 Route 303 in Blauvelt, New York.

59.     Upon information and belief, Arriflex's waste streams consisted of electrical component and fabrication waste, maintenance waste, office waste and packaging waste, which likely contained hazardous substances such as acetone, benzene, cadmium, copper, dichloroethylene, lead, methyl ethyl ketone, methylene chloride, perchloroethylene, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylenes and/or zinc.

60.     By letter dated May 18, 2009, the Clarkstown Landfill JDG demanded that Arri pay its equitable share of response costs pursuant to Sections 107(a) and 113(f)(1) of CERCLA and common law.

61.     To date, Arri has not paid its equitable share of Site response costs.

62.     Third-Party Defendant Balfour Beatty ("Balfour Betty") is the successor to Cablec Corp. ("Cablec"), a manufacturer and distributor of electric cable and wire for utilities who generated waste streams containing hazardous substances that were disposed of at the Site.

63.     Cablec operated a facility within five miles of the Site, located at 17 Squadron Blvd. in New City, New York, from at least 1983 through 1990.

64.     Upon information and belief, Cablec's waste streams consisted of cafeteria waste, electrical component wastes, maintenance waste, office waste and packaging waste, which likely contained hazardous substances such as acetone, benzene, cadmium, copper, dichloroethylene, lead, methyl ethyl ketone, methylene chloride, perchloroethylene, toluene, trichloroethane,

trichloroethylene, vinyl chloride, xylenes and/or zinc.

65.     By letter dated May 18, 2009, the Clarkstown Landfill JDG demanded that Balfour Betty pay its equitable share of response costs pursuant to Sections 107(a) and 113(f)(1) of CERCLA and common law.

66.     To date, Balfour Betty has not paid its equitable share of Site response costs.

67.     Third-Party Defendant Bel-Bee Products, Inc. ("Bel-Bee") is the successor to BLB Tool & Die Corp. ("BLB Tool"), a manufacturer of metal stampings, wires, wire drawing dies and electric discharge machining templates who generated waste streams containing hazardous substances that were disposed of at the Site by C&A Carbone and Marangi Bros.

68.     Bel-Bee and/or BLB Tool operated a facility within five miles of the Site, located at 100 Snake Hill Road in West Nyack, New York, from at least 1977 through at least 1990.

69.     Upon information and belief, Bel-Bee and/or BLB Tool's waste streams consisted of aluminum, brass, copper, maintenance waste, metal fabrication waste, metal finishing waste, office waste, packaging waste, scrap metal, steel and used oil, which likely contained hazardous substances such as acetone, aluminum, benzene, chromium, copper, dichlorobenzene, dichloroethylene, lead, manganese, methyl ethyl ketone, methylene chloride, nickel, perchloroethylene, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylenes and/or zinc.

70.     By letter dated May 18, 2009, the Clarkstown Landfill JDG demanded that Bel-Bee pay its equitable share of response costs pursuant to Sections 107(a) and 113(f)(1) of CERCLA and common law.

71.     To date, Bel-Bee has not paid its equitable share of Site response costs.

72.     Third-Party Defendant Borough of Northvale, New Jersey ("Northvale") is a

borough located in Bergen County, New Jersey who generated waste streams containing hazardous substances that were disposed of at the Site by Third-Party Defendant Miele Sanitation, Inc. ("Miele Sanitation").

73.    Miele Sanitation transported waste from the Northvale Department of Public Works, located at 116 Paris Avenue in Northvale, New Jersey, which waste was contained in a 2-cubic yard containers picked up at least three times per week, and which waste was disposed of at the Site.

74.    Upon information and belief, Northvale's waste streams consisted of cafeteria waste, maintenance waste from the Northvale Department of Public Works, office waste, packaging waste, road debris, street sweepings and truck parts, which likely contained hazardous substances such as acetone, benzene, cadmium, dichloroethylene, lead, methyl ethyl ketone, methylene chloride, perchloroethylene, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylenes and/or zinc.

75.    By letter dated November 16, 2009, the Clarkstown Landfill JDG demanded that Northvale pay its equitable share of response costs pursuant to Sections 107(a) and 113(f)(1) of CERCLA and common law.

76.    To date, Northvale has not paid its equitable share of Site response costs.

77.    Third-Party Defendant C&A Carbone, Inc. ("C&A Carbone") is a waste hauler who selected the Site for disposal, and who transported and disposed of waste streams containing hazardous substances at the Site from at least 1967 through at least 1990.

78.    C&A Carbone is listed on the User's List for the Site as an entity who used the Site to dispose of waste.

79.    Upon information and belief, the waste streams transported and disposed of at the

Site by C&A Carbone consisted of at least auto body repair and auto repair wastes, cafeteria waste, construction waste, dry cleaner waste, electrical component and electrical wastes, food processing waste, hospital waste, maintenance waste, metal fabrication waste, metal finishing waste, metal processing waste, municipal solid waste, office waste, packaging waste, printing waste and retail waste, which likely contained hazardous substances such as acetone, arsenic, asbestos, benzene, benzo(a)anthracene, benzo(a)pyrene, cadmium, chromium, copper, cresol, dichlorobenzene, dichloroethylene, ethyl benzene, flourene, lead, manganese, mercury, methanol, methyl ethyl ketone, methylene chloride, nickel, perchloroethylene, phenanthrene, tin, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylenes and/or zinc.

80.     To date, C&A Carbone has not paid its equitable share of Site response costs.

81.     Third-Party Defendant CVS Caremark Corp. ("CVS") is a drug retail company with a chain of retail pharmacy stores with at least one location in Rockland County, New York who generated waste streams containing hazardous substances that were disposed of at the Site by Miele Sanitation.

82.     Upon information and belief, CVS's waste streams were placed in a 6-cubic yard waste container and consisted of cafeteria waste, maintenance waste, office waste, packaging waste, pharmaceutical waste, printing waste and retail waste, which likely contained hazardous substances such as acetone, barium, benzene, cadmium, copper, dichloroethylene, lead, mercury, methyl ethyl ketone, methylene chloride, perchloroethylene, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylenes and/or zinc.

83.     By letter dated May 18, 2009, the Clarkstown Landfill JDG demanded that CVS pay its equitable share of response costs pursuant to Sections 107(a) and 113(f)(1) of CERCLA and common law.

16

84.     To date, CVS has not paid its equitable share of Site response costs.

85.     Third-Party Defendant Cadie Products Corp. ("Cadie Products") the successor to Cadie Corporation ("Cadie Corp."), a manufacturer of cleaning aids and specialty products who generated waste streams containing hazardous substances that were disposed of at the Site.

86.     Cadie Products and/or Cadie Corp. operated a facility within five miles of the Site, located at 10 Virginia Avenue in West Nyack, New York, from at least 1963 to 1967.

87.     Upon information and belief, Cadie Products and/or Cadie Corp.'s waste streams consisted of cafeteria waste, industrial solvents, maintenance waste, office waste and packaging waste, which likely contained hazardous substances such as acetone, benzene, cadmium, dichloroethylene, lead, methyl ethyl ketone, methylene chloride, perchloroethylene, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylenes and/or zinc.

88.     By letter dated May 18, 2009, the Clarkstown Landfill JDG demanded that Cadie Products pay its equitable share of response costs pursuant to Sections 107(a) and 113(f)(1) of CERCLA and common law.

89.     To date, Cadie Products has not paid its equitable share of Site response costs.

90.     Third-Party Defendant Capasso Carting Co., Inc. ("Capasso Carting") is a waste hauler who selected the Site for disposal, and who transported and disposed of waste streams containing hazardous substances at the Site from at least 1987 through at least 1990.

91.     Upon information and belief, the waste streams transported and disposed of at the Site by Capasso Carting likely consisted of at least auto body repair and auto repair wastes, cafeteria waste, construction waste, dry cleaner waste, electrical component and electrical wastes, food processing waste, hospital waste, maintenance waste, metal fabrication waste, metal finishing waste, metal processing waste, municipal solid waste, office waste, packaging waste,

printing waste and retail waste, which likely contained hazardous substances such as acetone, arsenic, asbestos, benzene, benzo(a)anthracene, benzo(a)pyrene, cadmium, chromium, copper, cresol, dichlorobenzene, dichloroethylene, ethyl benzene, flourene, lead, manganese, mercury, methanol, methyl ethyl ketone, methylene chloride, nickel, perchloroethylene, phenanthrene, tin, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylenes and/or zinc.

92.     By letter dated March 16, 2010, the Clarkstown Landfill JDG demanded that Capasso Carting pay its equitable share of response costs pursuant to Sections 107(a) and 113(f)(1) of CERCLA and common law.

93.     To date, Capasso Carting has not paid its equitable share of Site response costs.

94.     Alternatively, Advanced Disposal Services, Inc. ("Advanced Disposal") is the successor to Capasso Carting and is responsible for the waste streams attributable to Capasso Carting, as alleged in paragraph no. 91 above.

95.     To date, Advanced Disposal has not paid its equitable share of Site response costs.

96.     Third-Party Defendant Carlo Minuto Carting Co. Inc. ("Minuto Carting") is a waste hauler who selected the Site for disposal, and who transported and disposed of waste streams containing hazardous substances at the Site.

97.     Minuto Carting is listed on the User's List for the Site as an entity who used the Site to dispose of waste.

98.     Upon information and belief, the waste streams transported and disposed of at the Site by Minuto Carting likely consisted of at least auto body repair and auto repair wastes, cafeteria waste, construction waste, dry cleaner waste, electrical component and electrical wastes, food processing waste, hospital waste, maintenance waste, metal fabrication waste, metal

finishing waste, metal processing waste, municipal solid waste, office waste, packaging waste, printing waste and retail waste, which likely contained hazardous substances such as acetone, arsenic, asbestos, benzene, benzo(a)anthracene, benzo(a)pyrene, cadmium, chromium, copper, cresol, dichlorobenzene, dichloroethylene, ethyl benzene, flourene, lead, manganese, mercury, methanol, methyl ethyl ketone, methylene chloride, nickel, perchloroethylene, phenanthrene, tin, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylenes and/or zinc.

99. By letter dated March 4, 2010, the Clarkstown Landfill JDG demanded that Minuto Carting pay its equitable share of response costs pursuant to Sections 107(a) and 113(f)(1) of CERCLA and common law.

100. To date, Minuto Carting has not paid its equitable share of Site response costs.

101. Third-Party Defendant Clarkstown Carting Co., Inc. ("Clarkstown Carting") is a waste hauler who selected the Site for disposal, and who transported and disposed of waste streams containing hazardous substances at the Site.

102. Clarkstown Carting is listed on the User's List for the Site as an entity who used the Site to dispose of waste.

103. Upon information and belief, Clarkstown Carting's waste streams likely consisted of at least auto body repair and auto repair wastes, cafeteria waste, construction waste, dry cleaner waste, electrical component and electrical wastes, food processing waste, hospital waste, maintenance waste, metal fabrication waste, metal finishing waste, metal processing waste, municipal solid waste, office waste, packaging waste, printing waste and retail waste, which likely contained hazardous substances such as acetone, arsenic, asbestos, benzene, benzo(a)anthracene, benzo(a)pyrene, cadmium, chromium, copper, cresol, dichlorobenzene, dichloroethylene, ethyl benzene, flourene, lead, manganese, mercury, methanol, methyl ethyl

ketone, methylene chloride, nickel, perchloroethylene, phenanthrene, tin, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylenes and/or zinc.

104.     To date, Clarkstown Carting has not paid its equitable share of Site response costs.

105.     Third-Party Defendant Cornetta's Restaurant & Marina Inc. ("Cornetta's Restaurant") is a restaurant and marina, who generated waste streams containing hazardous substances that were disposed of at the Site by the Town of Orangetown.

106.     Cornetta's Restaurant is located within five miles of the Site at 641 Piermont Avenue in Piermont, New York.

107.     Upon information and belief, Cornetta's Restaurant's waste streams consisted of dredge material from marina operations, maintenance waste, office waste, packaging waste, restaurant waste and sludge, which likely contained hazardous substances such as acetone, benzene, cadmium, dichloroethylene, lead, methyl ethyl ketone, methylene chloride, perchloroethylene, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylenes and/or zinc.

108.     By letter dated March 4, 2010, the Clarkstown Landfill JDG demanded that Cornetta's Restaurant pay its equitable share of response costs pursuant to Sections 107(a) and 113(f)(1) of CERCLA and common law.

109.     To date, Cornetta's Restaurant has not paid its equitable share of Site response costs.

110.     Third-Party Defendant Dairylea Cooperative Inc. ("Dairylea") is a milk marketing and services organization, who generated waste streams containing hazardous substances that were disposed of at the Site.

111.    Dairylea maintained a corporate headquarters located within five miles of the Site, located at One Blue Hill Plaza in Pearl River, New York, from at least 1923 to 1982.

112.    Dairylea operated dairy manufacturing and processing plants for its own line of dairy products, from at least 1923 to 1988.

113.    Upon information and belief, Dairylea's waste streams consisted of maintenance waste, office waste and packaging waste, which likely contained hazardous substances such as acetone, benzene, cadmium, dichloroethylene, lead, methyl ethyl ketone, methylene chloride, perchloroethylene, trichloroethane, trichloroethylene, toluene, vinyl chloride, xylenes and/or zinc.

114.    By letter dated May 18, 2009, the Clarkstown Landfill JDG demanded that Dairylea pay its equitable share of response costs pursuant to Sections 107(a) and 113(f)(1) of CERCLA and common law.

115.    To date, Dairylea has not paid its equitable share of Site response costs.

116.    Third-Party Defendant Damiani Sanitation, Inc. ("Damiani Sanitation") is a waste hauler who selected the Site for disposal, and who transported and disposed of waste streams containing hazardous substances at the Site.

117.    Damiani Sanitation is listed on the User's List for the Site as an entity who used the Site to dispose of waste.

118.    Upon information and belief, the waste streams transported and disposed of at the Site by Damiani Sanitation consisted of at least auto body repair and auto repair wastes, cafeteria waste, construction waste, dry cleaner waste, electrical component and electrical wastes, food processing waste, hospital waste, maintenance waste, metal fabrication waste, metal finishing waste, metal processing waste, municipal solid waste, office waste, packaging waste, printing

waste and retail waste, which likely contained hazardous substances such as acetone, arsenic, asbestos, benzene, benzo(a)anthracene, benzo(a)pyrene, cadmium, chromium, copper, cresol, dichlorobenzene, dichloroethylene, ethyl benzene, flourene, lead, manganese, mercury, methanol, methyl ethyl ketone, methylene chloride, nickel, perchloroethylene, phenanthrene, tin, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylenes and/or zinc.

119. By letter dated May 18, 2009, the Clarkstown Landfill JDG demanded that Damiani Sanitation pay its equitable share of response costs pursuant to Sections 107(a) and 113(f)(1) of CERCLA and common law.

120. To date, Damiani Sanitation has not paid its equitable share of Site response costs.

121. Third-Party Defendant Development Enterprises, Inc. ("Development Enterprises") is a manufacturer and installer of central vacuum systems and commercial suction systems who generated waste streams containing hazardous substances, and who selected the Site for disposal and transported and disposed of waste streams containing hazardous substances at the Site; and/or who generated waste containing hazardous substances that was disposed of at the Site.

122. Development Enterprises operated a facility within five miles of the Site, located at 129 Ridge Road in Valley Cottage, New York.

123. Development Enterprises transported and disposed of its own waste at the Site in at least 1980.

124. Upon information and belief, Development Enterprises' waste streams consisted of at least electrical component waste, maintenance waste, office waste and packaging waste, which likely contained hazardous substances such as acetone, benzene, cadmium, copper, dichloroethylene, lead, methyl ethyl ketone, methylene chloride, perchloroethylene, toluene,

trichloroethane, trichloroethylene, vinyl chloride, xylenes and/or zinc.

125.     By letter dated May 18, 2009, the Clarkstown Landfill JDG demanded that Development Enterprises pay its equitable share of response costs pursuant to Sections 107(a) and 113(f)(1) of CERCLA and common law.

126.     To date, Development Enterprises has not paid its equitable share of Site response costs.

127.     Third-Party Defendant East Ramapo Central School District ("East Ramapo CSD") is school district located in Valley Stream, New York who generated waste streams containing hazardous substances that were disposed of at the Site, from at least 1984 to 1990.

128.     Upon information and belief, East Ramapo CSD's waste streams consisted of cafeteria waste, maintenance waste, office waste and packaging waste, which likely contained hazardous substances such as acetone, benzene, cadmium, dichloroethylene, lead, methyl ethyl ketone, methylene chloride, perchloroethylene, trichloroethane, trichloroethylene, toluene, vinyl chloride, xylenes and/or zinc.

129.     By letter dated November 16, 2009, the Clarkstown Landfill JDG demanded that East Ramapo CSD pay its equitable share of response costs pursuant to Sections 107(a) and 113(f)(1) of CERCLA and common law.

130.     To date, East Ramapo CSD has not paid its equitable share of Site response costs.

131.     Third-Party Defendant Eastman Chemical Co. ("Eastman Chemical") is the successor to Eastman Kodak Company, a manufacturer of polyesters, chemicals, fibers and plastics who generated waste streams containing hazardous substances that were disposed of at the Site.

132.     A subsidiary of Eastman Kodak Company, Tennessee Eastman Company,

operated a facility within five miles of the Site, located on Route 303 in Orangeburg, New York from at least 1963 to 1967.

133.    The legal liabilities associated with the former Tennessee Eastman Company were assumed by Eastman Chemical, when Eastman Chemical began operating independently from Eastman Kodak Company in 1994.

134.    Upon information and belief, the former Tennessee Eastman Company's waste streams consisted of cafeteria waste, industrial solvents, maintenance waste, office waste, packaging waste, plastic fabrication waste and polyester fabrication waste, which likely contained hazardous substances such as acetone, benzene, cadmium, dichloroethylene, lead, methyl ethyl ketone, methylene chloride, perchloroethylene, trichloroethane, trichloroethylene, toluene, vinyl chloride, xylenes and/or zinc.

135.    By letter dated August 14, 2009, the Clarkstown Landfill JDG demanded that Eastman Chemical pay its equitable share of response costs pursuant to Sections 107(a) and 113(f)(1) of CERCLA and common law.

136.    To date, Eastman Chemical has not paid its equitable share of Site response costs.

137.    Third-Party Defendant Edroy Products Co., Inc. ("Edroy Products") is a manufacturer of ophthalmic goods who generated waste streams containing hazardous substances that were disposed of at the Site by Carlo Minuto Carting and the Village of Nyack.

138.    Edroy Products operated a facility within five miles of the Site, located at 245 North Midland Avenue in Nyack, New York, from at least 1981 through 1990.

139.    Upon information and belief, Edroy Products' waste streams consisted of at least electrical component waste, fabrication waste, maintenance waste, metal finishing waste, office waste and packaging waste, which likely contained hazardous substances such as acetone,

benzene, chromium, copper, dichlorobenzene, dichloroethylene, lead, manganese, methyl ethyl ketone, methylene chloride, perchloroethylene, trichloroethane, trichloroethane, trichloroethylene, toluene, vinyl chloride, xylenes and/or zinc.

140.     By letter dated May 18, 2009, the Clarkstown Landfill JDG demanded that Edroy Products pay its equitable share of response costs pursuant to Sections 107(a) and 113(f)(1) of CERCLA and common law.

141.     To date, Edroy Products has not paid its equitable share of Site response costs.

142.     Third-Party Defendant Frank Capasso, Inc. ("Frank Capasso") is a waste hauler who selected the Site for disposal, and who transported and disposed of waste streams containing hazardous substances at the Site from at least 1963 to at least 1987.

143.     Frank Capasso is listed on the User's List for the Site as an entity who used the Site to dispose of waste.

144.     Upon information and belief, the waste streams transported and disposed of at the Site by Frank Capasso consisted of at least auto body repair and auto repair wastes, cafeteria waste, construction waste, dry cleaner waste, electrical component and electrical wastes, food processing waste, hospital waste, maintenance waste, metal fabrication waste, metal finishing waste, metal processing waste, municipal solid waste, office waste, packaging waste, printing waste and retail waste, which likely contained hazardous substances such as acetone, arsenic, asbestos, benzene, benzo(a)anthracene, benzo(a)pyrene, cadmium, chromium, copper, cresol, dichlorobenzene, dichloroethylene, ethyl benzene, flourene, lead, manganese, mercury, methanol, methyl ethyl ketone, methylene chloride, nickel, perchloroethylene, phenanthrene, tin, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylenes and/or zinc.

145.     By letter dated March 16, 2010, the Clarkstown Landfill JDG demanded that

Frank Capasso pay its equitable share of response costs pursuant to Sections 107(a) and 113(f)(1) of CERCLA and common law.

146.    To date, Frank Capasso has not paid its equitable share of Site response costs.

147.    Alternatively, Advanced Disposal is the successor to Frank Capasso and is responsible for the waste streams attributable to Frank Capasso, as alleged in paragraph no. 144 above.

148.    To date, Advanced Disposal has not paid its equitable share of Site response costs.

149.    Upon information and belief, Third-Party Defendant Frank Frontino Wrecking Co., Inc. ("Frank Frontino Wrecking") is a general contractor that provides excavation and wrecking services, who selected the Site for disposal, and who transported and disposed of waste streams containing hazardous substances at the Site.

150.    Frank Frontino Wrecking is listed on the User's List for the Site as an entity who used the Site to dispose of waste.

151.    Upon information and belief, the waste streams transported and disposed of at the Site by Frank Frontino Wrecking consisted of construction waste, demolition waste, maintenance waste and office waste, which likely contained hazardous substances such as acetone, benzene, cadmium, chromium, copper, dichloroethylene, lead, methyl ethyl ketone, methylene chloride, nickel, perchloroethylene, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylenes and/or zinc.

152.    By letter dated March 4, 2010, the Clarkstown Landfill JDG demanded that Frank Frontino Wrecking pay its equitable share of response costs pursuant to Sections 107(a) and 113(f)(1) of CERCLA and common law.

153.    To date, Frank Frontino Wrecking has not paid its equitable share of Site response costs.

154.    Third-Party Defendant Frank J. Tucek & Sons, Inc. ("Tucek & Sons") is the successor to FJT, Inc. ("FJT"), a roofing, siding and remodeling company who selected the Site for disposal, and who transported and disposed of waste streams containing hazardous substances at the Site; and/or who generated waste streams containing hazardous substances that were disposed of at the Site.

155.    FJT is listed on the User's List for the Site as an entity who used the Site to dispose of waste.

156.    From at least 1985 at least 1990, FJT transported all of the waste generated by its business operations and disposed of such waste at the Site.

157.    Upon information and belief, FJT's waste streams consisted of at least construction and demolition waste, including but not limited to, aluminum scrap, building materials, maintenance waste, office waste, old asphalt shingles, packaging waste, roofing and siding materials and treated lumber, which likely contained hazardous substances such as acetone, asbestos, benzene, benzo(a)anthracene, benzo(a)pyrene, cadmium, cresol, dichloroethylene, fluorene, lead, methyl ethyl ketone, methylene chloride, perchloroethylene, phenanthrene, tin, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylenes and/or zinc.

158.    By letter dated May 18, 2009, the Clarkstown Landfill JDG demanded that Tucek & Sons pay its equitable share of response costs pursuant to Sections 107(a) and 113(f)(1) of CERCLA and common law.

159.    To date, Tucek & Sons has not paid its equitable share of Site response costs.

160.    Third-Party Defendant Frank Valerio General Contracting Corp. ("Frank Valerio

Contracting") is a general contractor involved in the construction of residential homes who selected the Site for disposal, and who transported and disposed of waste streams containing hazardous substances at the Site; and/or who generated waste streams containing hazardous substances that were disposed of at the Site.

161.    Frank Valerio Contracting is listed on the User's List for the Site as an entity who used the Site to dispose of waste.

162.    Upon information and belief, Frank Valerio Contracting's waste streams consisted of construction waste, demolition waste, maintenance waste, office waste and packaging waste, which likely contained hazardous substances such as acetone, benzene, cadmium, chromium, copper, dichloroethylene, lead, methyl ethyl ketone, methylene chloride, nickel, perchloroethylene, trichloroethane, trichloroethylene, toluene, vinyl chloride, xylenes and/or zinc.

163.    By letter dated May 18, 2009, the Clarkstown Landfill JDG demanded that Frank Valerio Contracting pay its equitable share of response costs pursuant to Sections 107(a) and 113(f)(1) of CERCLA and common law.

164.    To date, Frank Valerio Contracting has not paid its equitable share of Site response costs.

165.    Third-Party Defendant Gabriel Manufacturing Co. ("Gabriel Manufacturing") is a manufacturer of plastic glides for furniture who generated waste streams containing hazardous substances that were disposed of at the Site by Perillo Sanitation and Kenneth Hiep.

166.    Upon information and belief, Gabriel Manufacturing's waste streams consisted of cafeteria waste, chemical waste, maintenance waste, office waste, packaging waste and plastic fabrication waste, which likely contained hazardous substances such as acetone, benzene,

cadmium, copper, dichloroethylene, lead, methyl ethyl ketone, methylene chloride, perchloroethylene, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylenes and/or zinc.

167.    By letter dated May 18, 2009, the Clarkstown Landfill JDG demanded that Gabriel Manufacturing pay its equitable share of response costs pursuant to Sections 107(a) and 113(f)(1) of CERCLA and common law.

168.    To date, Gabriel Manufacturing has not paid its equitable share of Site response costs.

169.    Upon information and belief, Third-Party Defendant General Bearing Corp. ("General Bearing") is a manufacturer of radial ball bearings and various types of bearings who generated waste streams containing hazardous substances that were disposed of at the Site by Kenneth Hiep, H&H Sanitation and Trilano Waste Removal.

170.    General Bearing operated a facility within five miles of the Site, located at 44 High Street in West Nyack, New York, from at least 1960 to 1983.

171.    General Bearing operated another facility within five miles of the Site, located at 616 Route 303 in Blauvelt, New York, from at least 1983 through 1990.

172.    Upon information and belief, General Bearing's waste streams consisted of at least cafeteria waste, chemical solvents and degreasers, maintenance waste, metal fabrication waste, metal finishing waste, office waste and packaging waste, which likely contained hazardous substances such as acetone, benzene, chromium, copper, dichloroethylene, lead, manganese, methyl ethyl ketone, methylene chloride, nickel, perchloroethylene, trichloroethane, trichloroethylene, toluene, vinyl chloride, xylenes and/or zinc.

173.    By letter dated May 18, 2009, the Clarkstown Landfill JDG demanded that

General Bearing pay its equitable share of response costs pursuant to Sections 107(a) and 113(f)(1) of CERCLA and common law.

174.    To date, General Bearing has not paid its equitable share of Site response costs.

175.    Third-Party Defendant Getty Properties Corp. ("Getty Properties") is the parent company and/or successor to Getty Petroleum Corp., a property management and real estate investment company that owns and/or manages multiple gas stations with convenience stores, and who generated waste streams containing hazardous substances that were disposed of at the Site.

176.    Getty Petroleum Corp. owned and/or operated at least one station within five miles of the Site, located at Route 303 and Storms Road in Valley Cottage, New York.

177.    Upon information and belief, Getty Petroleum Corp.'s waste streams consisted of auto service station waste, contaminated soil, maintenance waste, office waste and retail waste, which likely contained hazardous substances such as acetone, benzene, cadmium, chromium, ethyl benzene, dichloroethylene, lead, manganese, mercury, methyl ethyl ketone, methylene chloride, nickel, perchloroethylene, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylenes and/or zinc.

178.    By letter dated May 18, 2009, the Clarkstown Landfill JDG demanded that Getty Properties pay its equitable share of response costs pursuant to Sections 107(a) and 113(f)(1) of CERCLA and common law.

179.    To date, Getty Properties has not paid its equitable share of Site response costs.

180.    Upon information and belief, Third-Party Defendant H. Pfanstiel Hardware Co., Inc. ("Pfanstiel Hardware") is a manufacturer of decorative cabinet and bathroom hardware who generated waste streams containing hazardous substances that were disposed of at the Site.

181.     Upon information and belief, Pfanstiel Hardware's waste streams consisted of construction waste, maintenance waste, metal fabrication waste, office waste and packaging waste, which likely contained hazardous substances such as acetone, benzene, cadmium, chromium, copper, dichloroethylene, lead, manganese, methyl ethyl ketone, methylene chloride, nickel, perchloroethylene, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylenes and/or zinc.

182.     By letter dated May 18, 2009, the Clarkstown Landfill JDG demanded that Pfanstiel Hardware pay its equitable share of response costs pursuant to Sections 107(a) and 113(f)(1) of CERCLA and common law.

183.     To date, Pfanstiel Hardware has not paid its equitable share of Site response costs.

184.     Upon information and belief, Third-Party Defendant Hedwin Corp. ("Hedwin") is a manufacturer of plastic industrial containers, drum liners and table placements who generated waste streams containing hazardous substances that were disposed of at the Site.

185.     Upon information and belief, Hedwin maintained a corporate headquarters within five miles of the Site, located at One Blue Hill Plaza in Pearl River, New York, in at least 1988.

186.     Upon information and belief, Hedwin's waste streams consisted of maintenance waste, metal fabrication waste, office waste, packaging waste, plastic fabrication waste and rubber products waste, which likely contained hazardous substances such as acetone, arsenic, benzene, cadmium, chromium, copper, dichloroethylene, lead, manganese, mercury, methyl ethyl ketone, methylene chloride, nickel, perchloroethylene, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylenes and/or zinc.

187.     By letter dated May 18, 2009, the Clarkstown Landfill JDG demanded that Hedwin pay its equitable share of response costs pursuant to Sections 107(a) and 113(f)(1) of

31

CERCLA and common law.

188.   To date, Hedwin has not paid its equitable share of Site response costs.

189.   Upon information and belief, Third-Party Defendant Helmer-Cronin Construction, Inc. ("Helmer-Cronin") is a commercial construction company who selected the Site for disposal, and who disposed of waste streams containing hazardous substances at the Site from at least 1985 to 1990; and/or who generated waste streams containing hazardous substances that were disposed of at the Site.

190.   Helmer-Cronin is listed on the User's List for the Site as an entity who used the Site to dispose of waste.

191.   Upon information and belief, Helmer-Cronin's waste streams consisted of at least construction waste, maintenance waste, metal fabrication waste, office waste and packaging waste, which likely contained hazardous substances such as acetone, benzene, cadmium, chromium, copper, dichloroethylene, lead, manganese, methyl ethyl ketone, methylene chloride, nickel, perchloroethylene, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylenes and/or zinc.

192.   By letter dated May 18, 2009, the Clarkstown Landfill JDG demanded that Helmer-Cronin pay its equitable share of response costs pursuant to Sections 107(a) and 113(f)(1) of CERCLA and common law.

193.   To date, Helmer-Cronin has not paid its equitable share of Site response costs.

194.   Third-Party Defendant Hiltronics Corp. ("Hiltronics") is a manufacturer of electronic subassemblies for military communications who generated waste streams containing hazardous substances that were disposed of at the Site.

195.   Hiltronics operated a facility located at Stony Point Industrial Park in Stony Point,

New York, from at least 1988 to at least 1990.

196.    Upon information and belief, Hiltronics' waste streams consisted of electrical component waste, fabrication waste, maintenance waste, metal finishing waste, office waste and packaging waste, which likely contained hazardous substances such as acetone, benzene, cadmium, chromium, copper, dichloroethylene, lead, manganese, methyl ethyl ketone, methylene chloride, nickel, perchloroethylene, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylenes and/or zinc.

197.    By letter dated May 18, 2009, the Clarkstown Landfill JDG demanded that Hiltronics pay its equitable share of response costs pursuant to Sections 107(a) and 113(f)(1) of CERCLA and common law.

198.    To date, Hiltronics has not paid its equitable share of Site response costs.

199.    Third-Party Defendant Huhtamaki, Inc. ("Huhtamaki") is the successor to Sealright Company, Inc. ("Sealright"), a manufacturer of ceramic and magnetic cartridges, molded plastic components and containers for food and industrial packaging who generated waste streams containing hazardous substances that were disposed of at the Site.

200.    Sealright operated a facility within five miles of the Site, located at Route 303 in Orangeburg, New York, from at least 1968 to 1970.

201.    Upon information and belief, Sealright's waste streams consisted of cafeteria waste, maintenance waste, office waste, packaging waste and plastic fabrication waste, which likely contained hazardous substances such as acetone, benzene, cadmium, dichloroethylene, lead, methyl ethyl ketone, methylene chloride, perchloroethylene, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylenes and/or zinc.

202.    By letter dated September 28, 2011, the Clarkstown Landfill JDG demanded that

Huhtamaki pay its equitable share of response costs pursuant to Sections 107(a) and 113(f)(1) of CERCLA and common law.

203.    To date, Huhtamaki has not paid its equitable share of Site response costs.

204.    Third-Party Defendant Illinois Tool Works Inc. ("ITW") is the parent company and/or successor to Minigrip/ZIP-PAK ("Minigrip") and Wilsonart International, Inc. ("Wilsonart"), formerly known as Ralph Wilson Plastics Company ("Ralph Wilson Plastics").

205.    Minigrip is a manufacturer of fasteners, packaging and components for industrial and consumer applications who generated waste streams containing hazardous substances that were disposed of at the Site by Miele Sanitation.

206.    Minigrip operated a facility within five miles of the Site, located at Route 303 in Orangeburg, New York, from at least 1969 to 1989.

207.    Upon information and belief, Minigrip's waste streams consisted of cafeteria waste, maintenance waste, office waste, packaging waste and plastic fabrication waste, which likely contained hazardous substances such as acetone, benzene, cadmium, dichloroethylene, lead, methyl ethyl ketone, methylene chloride, perchloroethylene, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylenes and/or zinc.

208.    Ralph Wilson Plastics was a manufacturer of furniture and decorative laminates who generated waste streams containing hazardous substances that were disposed of at the Site.

209.    Ralph Wilson Plastics operated a facility within five miles of the Site, located at 100 Brenner Drive (formerly Western Highway) in Spring Valley, New York, from at least 1966 through 1990.

210.    Upon information and belief, Ralph Wilson's waste streams consisted of cafeteria waste, maintenance waste, office waste, packaging waste and plastic fabrication waste, which

34

likely contained hazardous substances such as acetone, benzene, cadmium, dichloroethylene, lead, methyl ethyl ketone, methylene chloride, perchloroethylene, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylenes and/or zinc.

211.   By letter dated May 18, 2009, the Clarkstown Landfill JDG demanded that ITW pay its equitable share of response costs pursuant to Sections 107(a) and 113(f)(1) of CERCLA and common law.

212.   To date, ITW has not paid its equitable share of Site response costs.

213.   Third-Party Defendant Inertia Switch, Inc. ("Inertia Switch") is a manufacturer of inertia switches and shock recorders who generated waste streams containing hazardous substances that were disposed of at the Site.

214.   Inertia Switch operated a facility within five miles of the Site, located at 260 North Route 303 in West Nyack, New York, from at least 1978 through 1990.

215.   Upon information and belief, Inertia Switch's waste streams consisted of electrical component waste, maintenance waste, metal fabrication waste, office waste and packaging waste, which likely contained hazardous substances such as acetone, benzene, cadmium, chromium, copper, dichloroethylene, lead, manganese, methyl ethyl ketone, methylene chloride, nickel, perchloroethylene, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylenes and/or zinc.

216.   By letter dated May 18, 2009, the Clarkstown Landfill JDG demanded that Inertia Switch pay its equitable share of response costs pursuant to Sections 107(a) and 113(f)(1) of CERCLA and common law.

217.   To date, Inertia Switch has not paid its equitable share of Site response costs.

218.   Third-Party Defendant International Advanced Materials, Inc. ("International

Advanced Materials") is a manufacturer of refractory metals, custom machine parts, and high

purity metals for electronics applications who generated waste streams containing hazardous

substances that were disposed of at the Site.

219.    International Advanced Materials operated a facility located at 16 Lafayette

Avenue in Suffern, New York, from at least 1982 to 1988, during which time period waste from

Spring Valley area companies was disposed of at the Site.

220.    International Advanced Materials also operated a facility located at 2 North Cole

Avenue in Spring Valley, New York, from at least 1989 through 1990, during which time period

waste from Spring Valley area companies was disposed of at the Site.

221.    Upon information and belief, International Advanced Materials' waste streams

consisted of maintenance waste, metal fabrication waste, metal finishing waste, metallurgy

waste, office waste and packaging waste, which likely contained hazardous substances such as

acetone, benzene, cadmium, chromium, copper, dichloroethylene, lead, manganese, methyl ethyl

ketone, methylene chloride, nickel, perchloroethylene, toluene, trichloroethane,

trichloroethylene, vinyl chloride, xylenes and/or zinc.

222.    By letter dated May 18, 2009, the Clarkstown Landfill JDG demanded that

International Advanced pay its equitable share of response costs pursuant to Sections 107(a) and

113(f)(1) of CERCLA and common law.

223.    To date, International Advanced has not paid its equitable share of Site response

costs.

224.    Third-Party Defendant International Business Machines Corp. ("IBM") is a

multinational technology and consulting corporation that manufactures computers,

microprocessor chips, software, and electronic devices who selected the Site for disposal, and

who transported and disposed of waste streams containing hazardous substances at the Site; and/or who generated waste streams containing hazardous substances that were disposed of at the Site by Round Lake Sanitation Corp., Marangi Disposal and Suburban Carting Corp.

225. IBM is listed on the User's List for the Site as an entity who used the Site to dispose of waste.

226. Upon information and belief, IBM's waste streams consisted of cafeteria waste, construction debris, electrical component waste, empty microfiche chemical jugs, HVAC lubrication oil containers, maintenance waste, metal fabrication waste, office waste, packaging waste, waste ethylene glycol, waste fuel oil and waste hydraulic oil, which likely contained hazardous substances such as acetone, benzene, cadmium, chromium, copper, dichloroethylene, lead, manganese, methyl ethyl ketone, methylene chloride, nickel, perchloroethylene, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylenes and/or zinc.

227. By letter dated May 25, 2009, the Clarkstown Landfill JDG demanded that IBM pay its equitable share of response costs pursuant to Sections 107(a) and 113(f)(1) of CERCLA and common law.

228. To date, IBM has not paid its equitable share of Site response costs.

229. Third-Party Defendant Interstate Waste Services Inc. ("Interstate Waste") is the successor to Amhaul Carting, Inc. ("Amhaul Carting"), a waste hauler who selected the Site for disposal, and who transported and disposed of waste streams containing hazardous substances at the Site.

230. Amhaul Carting is listed on the User's List for the Site as an entity who used the Site to dispose of waste.

231. Upon information and belief, the likely waste streams hauled to the Site by

Amhaul Carting consisted of at least auto body repair and auto repair wastes, cafeteria waste, construction waste, dry cleaner waste, electrical component and electrical wastes, food processing waste, hospital waste, maintenance waste, metal fabrication waste, metal finishing waste, metal processing waste, municipal solid waste, office waste, packaging waste, printing waste and retail waste, which likely contained hazardous substances such as acetone, arsenic, asbestos, benzene, benzo(a)anthracene, benzo(a)pyrene, cadmium, chromium, copper, cresol, dichlorobenzene, dichloroethylene, ethyl benzene, flourene, lead, manganese, mercury, methanol, methyl ethyl ketone, methylene chloride, nickel, perchloroethylene, phenanthrene, tin, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylenes and/or zinc.

232.   By letter dated May 18, 2009, the Clarkstown Landfill JDG demanded that Interstate Waste pay its equitable share of response costs pursuant to Sections 107(a) and 113(f)(1) of CERCLA and common law.

233.   To date, Interstate Waste has not paid its equitable share of Site response costs.

234.   Alternatively, Advanced Disposal is the successor to Interstate Waste and is responsible for the waste streams attributable to Interstate Waste, as alleged in paragraph no. 231 above.

235.   To date, Advanced Disposal has not paid its equitable share of Site response costs.

236.   Third-Party Defendant Ira D. Conklin & Sons, Inc. ("Ira D. Conklin") is a provider of specialty contractor services, including the removal of underground storage tanks and the remediation of service stations and other commercial sites, who selected the Site for disposal, and who transported and disposed of waste streams containing hazardous substances at the Site; and/or who generated waste streams containing hazardous substances that were disposed of at

the Site.

237.   Ira D. Conklin is listed on the User's List for the Site as an entity who used the Site to dispose of waste.

238.   Ira D. Conklin transported and disposed of at least 60 cubic yards of gasoline-contaminated soil at the Site from gas stations in Spring Valley and Pearl River, New York.

239.   Upon information and belief, Ira D. Conklin's waste streams also consisted of maintenance waste, metal fabrication waste, office waste, packaging waste, plastic fabrication waste and rubber products waste, which likely contained hazardous substances such as acetone, arsenic, benzene, cadmium, chromium, copper, dichloroethylene, lead, manganese, mercury, methyl ethyl ketone, methylene chloride, nickel, perchloroethylene, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylenes and/or zinc.

240.   By letter dated May 18, 2009, the Clarkstown Landfill JDG demanded that Ira Conklin pay its equitable share of response costs pursuant to Sections 107(a) and 113(f)(1) of CERCLA and common law.

241.   To date, Ira D. Conklin has not paid its equitable share of Site response costs.

242.   Alternatively, Conklin Services & Construction Inc. ("Conklin Services") is the parent company and/or successor to Ira Conklin and is responsible for the waste streams attributable to Ira D. Conklin, as alleged in paragraph no. 239 above.

243.   To date, Conklin Services has not paid its equitable share of Site response costs.

244.   Third-Party Defendant Jomar Industries Inc. ("Jomar Industries") is a manufacturer of advertising displays who generated waste streams containing hazardous substances that were disposed of at the Site.

245.   Jomar Industries operated a facility located at 352 Route 59 in Monsey, New

York from at least 1988 to 1994, during which time period waste from Monsey area companies was disposed of at the Site.

246.    Upon information and belief, Jomar Industries' waste streams consisted of maintenance waste, metal fabrication waste, office waste, packaging waste, plastic fabrication waste and printing waste, which likely contained hazardous substances such as acetone, barium, benzene, cadmium, chromium, copper, dichloroethylene, lead, manganese, methyl ethyl ketone, methylene chloride, nickel, perchloroethylene, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylenes and/or zinc.

247.    By letter dated May 18, 2009, the Clarkstown Landfill JDG demanded that Jomar Industries pay its equitable share of response costs pursuant to Sections 107(a) and 113(f)(1) of CERCLA and common law.

248.    To date, Jomar Industries has not paid its equitable share of Site response costs.

249.    Third-Party Defendant Julius Petersen Boatyard ("Julius Peterson Boatyard"), is the successor to and/or is formerly known as Julius Petersen Inc., which is a boat repair and maintenance company who generated waste streams containing hazardous substances that were disposed of at the Site.

250.    Julius Peterson Inc. operated a facility within five miles of the Site, located at One Van Houten Street in Nyack, New York.

251.    Upon information and belief, Julius Peterson Inc.'s waste streams consisted of boat repair waste, fabrication waste, maintenance waste, office waste and packaging waste, which likely contained hazardous substances such as acetone, benzene, cadmium, copper, dichloroethylene, lead, methyl ethyl ketone, methylene chloride, perchloroethylene, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylenes and/or zinc.

252.     Third-Party Defendant Kenneth Hiep, Inc. ("Kenneth Hiep, Inc.") is a waste hauler who selected the Site for disposal, and who transported and disposed of waste streams containing hazardous substances at the Site.

253.     Kenneth Hiep, Inc. is listed on the User's List for the Site as an entity who used the Site to dispose of waste.

254.     Upon information and belief, the waste streams hauled to the Site by Kenneth Hiep, Inc. consisted of at least auto body repair and auto repair wastes, cafeteria waste, construction waste, dry cleaner waste, electrical component and electrical wastes, food processing waste, hospital waste, maintenance waste, metal fabrication waste, metal finishing waste, metal processing waste, municipal solid waste, office waste, packaging waste, printing waste and retail waste, which likely contained hazardous substances such as acetone, arsenic, asbestos, benzene, benzo(a)anthracene, benzo(a)pyrene, cadmium, chromium, copper, cresol, dichlorobenzene, dichloroethylene, ethyl benzene, flourene, lead, manganese, mercury, methanol, methyl ethyl ketone, methylene chloride, nickel, perchloroethylene, phenanthrene, tin, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylenes and/or zinc.

255.     By letter dated March 16, 2010, the Clarkstown Landfill JDG demanded that Kenneth Hiep, Inc. pay its equitable share of response costs pursuant to Sections 107(a) and 113(f)(1) of CERCLA and common law.

256.     To date, Kenneth Hiep, Inc. has not paid its equitable share of Site response costs.

257.     Third-Party Defendant Larson-MeterCraft Inc. ("Larson-MeterCraft") is the successor to Larson Instrument Co. ("Larson Instrument"), a manufacturer of instruments for measuring and testing electrical signals, contactless meter controllers, electrical controllers, temperature controllers, custom controllers and meters, inkless multi-style recorders, custom

electronic artworks and printing plates, who generated waste streams containing hazardous substances that were disposed of at the Site.

258.    Larson Instrument operated a facility within five miles of the Site, located at 145 Main Street in Nyack, New York.

259.    Larson Instrument operated another facility within five miles of the Site, located at Greenbush Road in Orangeburg, New York, from at least 1963 through 1990.

260.    Upon information and belief, Larson-Instrument's waste streams consisted of electrical component waste, maintenance waste, metal fabrication waste, metal finishing waste, municipal solid waste, office waste and packaging waste, which likely contained hazardous substances such as acetone, benzene, cadmium, chromium, copper, dichloroethylene, lead, manganese, methyl ethyl ketone, methylene chloride, nickel, perchloroethylene, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylenes and/or zinc.

261.    By letter dated May 18, 2009, the Clarkstown Landfill JDG demanded that Larson-MeterCraft pay its equitable share of response costs pursuant to Sections 107(a) and 113(f)(1) of CERCLA and common law.

262.    To date, Larson-MeterCraft has not paid its equitable share of Site response costs.

263.    Third-Party Defendant LeCroy Corp. ("LeCroy"), is the successor to and/or is formerly known as LeCroy Research Systems Corp. ("LeCroy Research"), which is a manufacturer of electronic instruments for data processing and nuclear research systems who generated waste streams containing hazardous substances that were disposed of at the Site.

264.    LeCroy Research operated a facility within five miles of the Site, located at 700 South Main Street in Spring Valley, New York, from at least 1977 through 1990.

265.    Upon information and belief, LeCroy Research's waste streams consisted of

electrical component waste, maintenance waste, metal fabrication waste, metal finishing waste, office waste and packaging waste, which likely contained hazardous substances such as acetone, benzene, cadmium, chromium, copper, dichloroethylene, lead, manganese, methyl ethyl ketone, methylene chloride, nickel, perchloroethylene, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylenes and/or zinc.

266.    By letter dated May 18, 2009, the Clarkstown Landfill JDG demanded that LeCroy pay its equitable share of response costs pursuant to Sections 107(a) and 113(f)(1) of CERCLA and common law.

267.    To date, LeCroy has not paid its equitable share of Site response costs.

268.    Alternatively, Third-Party Defendant Teledyne LeCroy, Inc. ("Teledyne LeCroy") is the parent company and/or successor to LeCroy Corp. and is responsible for the waste streams attributable to LeCroy Research, as alleged in paragraph no. 265 above.

269.    To date, Teledyne LeCroy has not paid its equitable share of Site response costs.

270.    Third-Party Defendant Louis Hornick & Co. ("Louis Hornick") is a manufacturer of window treatments and home textiles, who generated waste streams containing hazardous substances that were disposed of at the Site.

271.    Louis Hornick operated a facility located at 152 Broadway, Haverstraw, New York from at least 1977 through 1990, during which time period waste from Haverstraw area companies was disposed of at the Site.

272.    Upon information and belief, Louis Hornick's waste streams consisted of maintenance waste, office waste, packaging waste and textile manufacturing waste, which likely contained hazardous substances such as acetone, benzene, cadmium, dichloroethylene, lead, methyl ethyl ketone, methylene chloride, perchloroethylene, toluene, trichloroethane,

trichloroethylene, vinyl chloride, xylenes and/or zinc.

273.    By letter dated May 18, 2009, the Clarkstown Landfill JDG demanded that Louis Hornick pay its equitable share of response costs pursuant to Sections 107(a) and 113(f)(1) of CERCLA and common law.

274.    To date, Louis Hornick has not paid its equitable share of Site response costs.

275.    Third-Party Defendant Machida America Inc. ("Machida America") is a manufacturer of surgical and medical instruments, industrial borescopes and videoscopes who generated waste streams containing hazardous substances that were disposed of at the Site.

276.    Machida America operated a facility within five miles of the Site, located at 40 Ramland Road in Orangeburg, New York, from at least 1988 through 1990.

277.    Upon information and belief, Machida America's waste streams consisted of electrical component waste, maintenance waste, metal fabrication waste, metal finishing waste, office waste and packaging waste, which likely contained hazardous substances such as acetone, benzene, cadmium, chromium, copper, dichloroethylene, lead, manganese, methyl ethyl ketone, methylene chloride, nickel, perchloroethylene, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylenes and/or zinc.

278.    By letter dated May 18, 2009, the Clarkstown Landfill JDG demanded that Machida America pay its equitable share of response costs pursuant to Sections 107(a) and 113(f)(1) of CERCLA and common law.

279.    To date, Machida America has not paid its equitable share of Site response costs.

280.    Alternatively, Third-Party Defendant Vision-Sciences, Inc. ("Vision-Sciences") is the parent company and/or successor to Machida America, and is responsible for the waste streams attributable to Machida America, as alleged in paragraph no. 277 above.

281.     To date, Vision-Sciences has not paid its equitable share of Site response costs.

282.     Third-Party Defendant Macy's East, Inc. ("Macy's East") is a department store retailer who generated waste streams containing hazardous substances that were disposed of at the Site by Miele Sanitation.

283.     Macy's East operated a facility within five miles of the Site, located at 200 Route 59 in Nanuet, New York.

284.     Upon information and belief, Macy's East's waste streams consisted of cafeteria waste, maintenance waste, office waste, packaging waste and retail waste, which likely contained hazardous substances such as acetone, benzene, cadmium, dichloroethylene, lead, mercury, methyl ethyl ketone, methylene chloride, perchloroethylene, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylenes and/or zinc.

285.     By letter dated May 18, 2009, the Clarkstown Landfill JDG demanded that Macy's East pay its equitable share of response costs pursuant to Sections 107(a) and 113(f)(1) of CERCLA and common law.

286.     To date, Macy's East has not paid its equitable share of Site response costs.

287.     Third-Party Defendant Mancuso Construction & Remodeling Corp. ("Mancuso Construction") is the successor to and/or is formerly known as Jeff Mancuso Construction, which is a general contractor involved in the construction and remodeling of residential homes who selected the Site for disposal, and who transported and disposed of waste streams containing hazardous substances at the Site; and/or who generated waste streams containing hazardous substances that were disposed of at the Site.

288.     Mancuso Construction is listed on the User's List for the Site as an entity who used the Site to dispose of waste.

289.    Upon information and belief, Mancuso Construction's waste streams consisted of construction waste, maintenance waste, office waste and packaging waste, which likely contained hazardous substances such as acetone, benzene, cadmium, chromium, copper, -dichloroethylene, lead, methyl ethyl ketone, methylene chloride, nickel, perchloroethylene, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylenes and/or zinc.

290.    By letter dated May 18, 2009, the Clarkstown Landfill JDG demanded that Mancuso Construction pay its equitable share of response costs pursuant to Sections 107(a) and 113(f)(1) of CERCLA and common law.

291.    To date, Mancuso Construction has not paid its equitable share of Site response costs.

292.    Third-Party Defendant Materials Research Corp. ("Materials Research") is a manufacturer of semiconductor process equipment, high purity alloys, scientific instruments and lab equipment who generated waste streams containing hazardous substances that were disposed of at the Site.

293.    Materials Research operated a facility within five miles of the Site, located on Route 303 in Orangeburg, New York, from at least 1977 to 1989.

294.    Materials Research operated another facility within five miles of the Site, located at 300 Route 303 North in Blauvelt, New York, from at least 1988 to 1989.

295.    Upon information and belief, Materials Research's waste streams consisted of electrical component waste, maintenance waste, metal fabrication waste, office waste and packaging waste, which likely contained hazardous substances such as acetone, benzene, cadmium, chromium, copper, dichloroethylene, lead, manganese, methyl ethyl ketone, methylene chloride, nickel, perchloroethylene, toluene, trichloroethane, trichloroethylene, vinyl chloride,

xylenes and/or zinc.

296.    By letter dated May 18, 2009, the Clarkstown Landfill JDG demanded that Materials Research pay its equitable share of response costs pursuant to Sections 107(a) and 113(f)(1) of CERCLA and common law.

297.    To date, Materials Research has not paid its equitable share of Site response costs.

298.    Alternatively, Praxair Surface Technologies, Inc. ("Praxair") is the successor to Materials Research and is responsible for the waste streams attributable to Materials Research, as alleged in paragraph no. 295 above.

299.    To date, Praxair has not paid its equitable share of Site response costs.

300.    Third-Party Defendant Miele Sanitation is a waste hauler who selected the Site for disposal, and who transported and disposed of waste streams containing hazardous substances at the Site.

301.    Miele Sanitation is listed on the User's List for the Site as an entity who used the Site to dispose of waste.

302.    Upon information and belief, the likely waste streams hauled to the Site by Miele Sanitation included at least auto body repair and auto repair wastes, cafeteria waste, construction waste, dry cleaner waste, electrical component and electrical wastes, food processing waste, hospital waste, maintenance waste, metal fabrication waste, metal finishing waste, metal processing waste, municipal solid waste, office waste, packaging waste, printing waste and retail waste, which likely contained hazardous substances such as acetone, arsenic, asbestos, benzene, benzo(a)anthracene, benzo(a)pyrene, cadmium, chromium, copper, cresol, dichlorobenzene, dichloroethylene, ethyl benzene, flourene, lead, manganese, mercury, methanol, methyl ethyl ketone, methylene chloride, nickel, perchloroethylene, phenanthrene, tin, toluene,

trichloroethane, trichloroethylene, vinyl chloride, xylenes and/or zinc.

303.    By letter dated March 17, 2010, the Clarkstown Landfill JDG demanded that Miele Sanitation pay its equitable share of response costs pursuant to Sections 107(a) and 113(f)(1) of CERCLA and common law.

304.    To date, Miele Sanitation has not paid its equitable share of Site response costs.

305.    Third-Party Defendant Monsey Carting Co., Inc. ("Monsey Carting") is a waste hauler who selected the Site for disposal, and who transported and disposed of waste streams containing hazardous substances at the Site.

306.    Monsey Carting is listed on the User's List for the Site as an entity who used the Site to dispose of waste.

307.    Upon information and belief, the likely waste streams hauled to the Site by Monsey Carting included at least auto body repair and auto repair wastes, cafeteria waste, construction waste, dry cleaner waste, electrical component and electrical wastes, food processing waste, hospital waste, maintenance waste, metal fabrication waste, metal finishing waste, metal processing waste, municipal solid waste, office waste, packaging waste, printing waste and retail waste, which likely contained hazardous substances such as acetone, arsenic, asbestos, benzene, benzo(a)anthracene, benzo(a)pyrene, cadmium, chromium, copper, cresol, dichlorobenzene, dichloroethylene, ethyl benzene, flourene, lead, manganese, mercury, methanol, methyl ethyl ketone, methylene chloride, nickel, perchloroethylene, phenanthrene, tin, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylenes and/or zinc.

308.    By letter dated March 4, 2010, the Clarkstown Landfill JDG demanded that Monsey Carting pay its equitable share of response costs pursuant to Sections 107(a) and 113(f)(1) of CERCLA and common law.

309.    To date, Monsey Carting has not paid its equitable share of Site response costs.

310.    Alternatively, Minuto Carting is the successor to Monsey Carting and is responsible for the waste streams attributable to Monsey Carting, as alleged in paragraph no. 307 above.

311.    To date, Minuto Carting has not paid its equitable share of Site response costs for Monsey Carting.

312.    Third-Party Defendant Omni Waste Services, Inc. ("Omni Waste") is the successor to and/or is formerly known as K&J Carting, Inc. ("K&J Carting"), which is a waste hauler who selected the Site for disposal, and who transported and disposed of waste streams containing hazardous substances at the Site.

313.    Upon information and belief, the likely waste streams hauled to the Site by K&J Carting included at least auto body repair and auto repair wastes, cafeteria waste, construction waste, dry cleaner waste, electrical component and electrical wastes, food processing waste, hospital waste, maintenance waste, metal fabrication waste, metal finishing waste, metal processing waste, municipal solid waste, office waste, packaging waste, printing waste and retail waste, which likely contained hazardous substances such as acetone, arsenic, asbestos, benzene, benzo(a)anthracene, benzo(a)pyrene, cadmium, chromium, copper, cresol, dichlorobenzene, dichloroethylene, ethyl benzene, flourene, lead, manganese, mercury, methanol, methyl ethyl ketone, methylene chloride, nickel, perchloroethylene, phenanthrene, tin, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylenes and/or zinc.

314.    By letter dated May 18, 2009, the Clarkstown Landfill JDG demanded that Omni Waste pay its equitable share of response costs pursuant to Sections 107(a) and 113(f)(1) of CERCLA and common law.

315.    To date, Omni Waste has not paid its equitable share of Site response costs.

316.    Third-Party Defendant Opticon, Inc. ("Opticon") is a manufacturer of laser and image scanners, who generated waste streams containing hazardous substances that were disposed of at the Site.

317.    Opticon operated a facility within five miles of the Site, located at 36 Ramland Road in Orangeburg, New York.

318.    Upon information and belief, Opticon's waste streams consisted of electrical component waste, maintenance waste, metal fabrication waste, office waste and packaging waste, which likely contained hazardous substances such as acetone, benzene, cadmium, chromium, copper, dichloroethylene, lead, manganese, methyl ethyl ketone, methylene chloride, nickel, perchloroethylene, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylenes and/or zinc.

319.    By letter dated May 18, 2009, the Clarkstown Landfill JDG demanded that Opticon pay its equitable share of response costs pursuant to Sections 107(a) and 113(f)(1) of CERCLA and common law.

320.    To date, Opticon has not paid its equitable share of Site response costs.

321.    Third-Party Defendant PSC, LLC ("PSC") is the successor to Chemical Pollution Control, Inc. ("Chemical Pollution Control"), an industrial waste hauler and chemical cleaning company who selected the Site for disposal, and who transported and disposed of waste streams containing hazardous substances at the Site, and/or who arranged for the transportation and/or disposal of waste streams containing hazardous substances at the Site.

322.    Upon information and belief, the likely waste streams hauled and/or arranged to be hauled to the Site by Chemical Pollution Control included at least industrial chemicals and

solvents, maintenance waste, metal fabrication waste, office waste, packaging waste and at least

one dumpster of chemicals and toxic materials from Clarkstown North High School on or about

August 1987, which likely contained hazardous substances such as acetone, benzene, cadmium,

chromium, copper, dichloroethylene, lead, manganese, methyl ethyl ketone, methylene chloride,

nickel, perchloroethylene, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylenes

and/or zinc.

323.    By letter dated May 18, 2009, the Clarkstown Landfill JDG demanded that PSC

pay its equitable share of response costs pursuant to Sections 107(a) and 113(f)(1) of CERCLA

and common law.

324.    To date, PSC has not paid its equitable share of Site response costs.

325.    Third-Party Defendant Par Pharmaceutical, Inc. ("Par Pharmaceutical") is a

manufacturer of pharmaceuticals who generated waste streams containing hazardous substances

that were disposed of at the Site.

326.    Par Pharmaceutical operated a facility located at One Ram Ridge Road in Spring

Valley, New York, from at least 1986 through 1990.

327.    Upon information and belief, Par Pharmaceutical's waste streams consisted of

industrial chemicals, lab waste, maintenance waste, office waste, organic solvents, packaging

waste and pharmaceutical development waste, which likely contained hazardous substances such

acetone, benzene, cadmium, dichloroethylene, lead, methyl ethyl ketone, methylene chloride,

perchloroethylene, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylenes and/or

zinc.

328.    By letter dated May 18, 2009, the Clarkstown Landfill JDG demanded that Par

Pharmaceutical pay its equitable share of response costs pursuant to Sections 107(a) and

113(f)(1) of CERCLA and common law.

329.    To date, Par Pharmaceutical has not paid its equitable share of Site response costs.

330.    Third-Party Defendant Pat Nazzaro Disposal, Inc. ("Nazzaro Disposal") is a waste hauler, who selected the Site for disposal, and who transported and disposed of waste streams containing hazardous substances at the Site, from at least 1959 through the closure of the landfill.

331.    Nazarro Disposal is listed on the User's List for the Site as an entity who used the Site to dispose of waste.

332.    Upon information and belief, the likely waste streams hauled to the Site by Nazzaro Disposal included at least auto body repair and auto repair wastes, cafeteria waste, construction waste, dry cleaner waste, electrical component and electrical wastes, food processing waste, hospital waste, maintenance waste, metal fabrication waste, metal finishing waste, metal processing waste, municipal solid waste, office waste, packaging waste, printing waste and retail waste, which likely contained hazardous substances such as acetone, arsenic, asbestos, benzene, benzo(a)anthracene, benzo(a)pyrene, cadmium, chromium, copper, cresol, dichlorobenzene, dichloroethylene, ethyl benzene, flourene, lead, manganese, mercury, methanol, methyl ethyl ketone, methylene chloride, nickel, perchloroethylene, phenanthrene, tin, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylenes and/or zinc.

333.    To date, Nazzaro Disposal has not paid its equitable share of Site response costs.

334.    Third-Party Defendant Perillo Sanitation Co., Inc. ("Perillo Sanitation") is a waste hauler who selected the Site for disposal, and who transported and disposed of waste streams containing hazardous substances at the Site.

335.     Perillo Sanitation is listed on the User's List for the Site as an entity who used the Site to dispose of waste.

336.     Upon information and belief, the likely waste streams hauled to the Site by Perillo Sanitation included at least auto body repair and auto repair wastes, cafeteria waste, construction waste, dry cleaner waste, electrical component and electrical wastes, food processing waste, hospital waste, maintenance waste, metal fabrication waste, metal finishing waste, metal processing waste, municipal solid waste, office waste, packaging waste, printing waste and retail waste, which likely contained hazardous substances such as such as acetone, arsenic, asbestos, benzene, benzo(a)anthracene, benzo(a)pyrene, cadmium, chromium, copper, cresol, dichlorobenzene, dichloroethylene, ethyl benzene, flourene, lead, manganese, mercury, methanol, methyl ethyl ketone, methylene chloride, nickel, perchloroethylene, phenanthrene, tin, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylenes and/or zinc.

337.     By letter dated May 18, 2009, the Clarkstown Landfill JDG demanded that Perillo Sanitation pay its equitable share of response costs pursuant to Sections 107(a) and 113(f)(1) of CERCLA and common law.

338.     To date, Perillo Sanitation has not paid its equitable share of Site response costs.

339.     Alternatively, Third-Party Defendant Anthony Carting Inc. ("Anthony Carting") is the successor to Perillo Sanitation and is responsible for the waste streams attributable to Perillo Sanitation, as alleged in paragraph no. 336 above.

340.     Third-Party Defendant Plastic-Craft Products Corp. ("Plastic-Craft") is a manufacturer of custom plastic parts and accessories, who generated waste streams containing hazardous substances that were disposed of at the Site.

341.     Plastic-Craft operated a facility within five miles of the Site, located at One

Station Plaza in West Nyack, New York, from at least 1958 to 1969.

342.   Plastic-Craft operated another facility within five miles of the Site, located at 164 West Nyack Road in West Nyack, New York, from at least 1986 to 1989.

343.   Plastic-Craft operated another facility within five miles of the Site, located at 744 West Nyack Road in West Nyack, New York.

344.   Upon information and belief, Plastic-Craft's waste streams consisted of maintenance waste, office waste, packaging waste and plastic fabrication waste, which likely contained hazardous substances such as acetone, benzene, cadmium, dichloroethylene, lead, methyl ethyl ketone, methylene chloride, perchloroethylene, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylenes and/or zinc.

345.   By letter dated May 18, 2009, the Clarkstown Landfill JDG demanded that Plastic-Craft pay its equitable share of response costs pursuant to Sections 107(a) and 113(f)(1) of CERCLA and common law.

346.   To date, Plastic-Craft has not paid its equitable share of Site response costs.

347.   Third-Party Defendant Rexel Inc. ("Rexel") is the successor to W&G Sewing Equipment Co., which is also known as and/or is the successor to Willcox & Gibbs Sewing Machine Co. ("collectively W&G"), a manufacturer of industrial sewing machines who generated waste streams containing hazardous substances that were disposed of at the Site.

348.   W&G operated two facilities, in South Nyack and on Cedar Hill Avenue in Nyack, New York, from at least 1958 until 1977, during which time period waste from South Nyack and Nyack area companies was disposed of at the Site.

349.   Upon information and belief, W&G's waste streams consisted of electrical component waste, maintenance waste, metal fabrication waste, metal finishing waste, municipal

solid waste, office waste and packaging waste, which likely contained hazardous substances such as acetone, benzene, cadmium, chromium, copper, dichloroethylene, lead, manganese, methyl ethyl ketone, methylene chloride, nickel, perchloroethylene, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylenes and/or zinc.

350.    By letter dated May 18, 2009, the Clarkstown Landfill JDG demanded that Rexel pay its equitable share of response costs pursuant to Sections 107(a) and 113(f)(1) of CERCLA and common law.

351.    To date, Rexel has not paid its equitable share of Site response costs.

352.    Third-Party Defendant Rockland County Iron Works, Inc. ("Rockland Iron") is a fabricator of structural and ornamental iron who generated waste streams containing hazardous substances that were disposed of at the Site.

353.    Rockland Iron operated a facility located at Route 59 in Monsey, New York from at least 1963 to 1989, during which time period waste from Monsey area companies was disposed of at the Site.

354.    Upon information and belief, Rockland Iron's waste streams consisted of maintenance waste, metal fabrication waste, office waste and packaging waste, which likely contained hazardous substances such as acetone, benzene, cadmium, chromium, copper, dichloroethylene, lead, manganese, methyl ethyl ketone, methylene chloride, nickel, perchloroethylene, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylenes and/or zinc.

355.    By letter dated May 18, 2009, the Clarkstown Landfill JDG demanded that Rockland Iron pay its equitable share of response costs pursuant to Sections 107(a) and 113(f)(1) of CERCLA and common law.

356.    To date, Rockland Iron has not paid its equitable share of Site response costs.

357.    Third-Party Defendant Rockland Insulated Wire & Cable Co., Inc. ("Rockland Wire") is a manufacturer of industrial wire and wire insulation and jacketing who generated waste streams containing hazardous substances that were disposed of at the Site.

358.    Rockland Wire operated a facility located at 34 Main Avenue in Haverstraw, New York from at least 1966 to 1970, during which time period waste from Haverstraw area companies was disposed of at the Site.

359.    Rockland Wire operated another facility, located at 87 Broadway in Haverstraw, New York from at least 1971 through 1990, during which time period waste from Haverstraw area companies was disposed of at the Site.

360.    Upon information and belief, Rockland Wire's waste streams consisted of electrical component waste, maintenance waste, metal fabrication waste, office waste and packaging waste, which likely contained hazardous substances such as acetone, benzene, cadmium, chromium, copper, dichloroethylene, lead, manganese, methyl ethyl ketone, methylene chloride, nickel, perchloroethylene, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylenes and/or zinc.

361.    By letter dated May 18, 2009, the Clarkstown Landfill JDG demanded that Rockland Wire pay its equitable share of response costs pursuant to Sections 107(a) and 113(f)(1) of CERCLA and common law.

362.    To date, Rockland Wire has not paid its equitable share of Site response costs.

363.    Third-Party Defendant Rossi Tool & Dies, Inc. ("Rossi Tool") is a manufacturer of tools, dies and other small parts who generated waste streams containing hazardous substances that were disposed of at the Site.

364.     Rossi Tool operated a facility located at Route 59 in Spring Valley, New York, from at least 1958 to 1977, during which time waste from Spring Valley area companies was disposed of at the Site.

365.     Upon information and belief, Rossi Tool's waste streams consisted of maintenance waste, metal fabrication waste, office waste and packaging waste, which likely contained hazardous substances such as acetone, benzene, cadmium, chromium, copper, dichloroethylene, lead, manganese, methyl ethyl ketone, methylene chloride, nickel, perchloroethylene, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylenes and/or zinc.

366.     By letter dated May 18, 2009, the Clarkstown Landfill JDG demanded that Rossi Tool pay its equitable share of response costs pursuant to Sections 107(a) and 113(f)(1) of CERCLA and common law.

367.     To date, Rossi Tool has not paid its equitable share of Site response costs.

368.     Third-Party Defendant Seth Glasser & Co. ("Seth Glasser & Co.") is a general contractor involved in the construction of residential homes, who selected the Site for disposal, and who transported and disposed of waste streams containing hazardous substances at the Site; and/or who generated waste streams containing hazardous substances that were disposed of at the Site.

369.     Seth Glasser & Co. operated a facility within five miles of the Site located at One Van Houten Street in Nyack, New York.

370.     Seth Glasser & Co. operated another facility within five miles of the Site, located at 15 Old Hempstead Road in New City, New York.

371.     Seth Glasser & Co. is listed on the User's List for the Site as an entity who used

the Site to dispose of waste.

372.    Upon information and belief, Seth Glasser & Co.'s waste streams consisted of construction debris, maintenance waste, office waste, packaging waste and treated lumber, which likely contained hazardous substances such as acetone, benzene, cadmium, chromium, copper, dichloroethylene, lead, methyl ethyl ketone, methylene chloride, nickel, perchloroethylene, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylenes and/or zinc.

373.    By letter dated May 19, 2009, the Clarkstown Landfill JDG demanded that Seth Glasser & Co. pay its equitable share of response costs pursuant to Sections 107(a) and 113(f)(1) of CERCLA and common law.

374.    To date, Seth Glasser & Co. has not paid its equitable share of Site response costs.

375.    Third-Party Defendant Schultz Ford Lincoln, Inc. ("Schultz Ford Lincoln") is the successor to and/or is formerly known as Schultz Ford Lincoln Mercury, Inc. ("Schultz Ford Mercury"), which is an automobile dealership, service and repair shop who generated waste streams containing hazardous substances that were disposed of at the Site by Miele Sanitation.

376.    Schultz Ford Mercury operated a facility within five miles of the Site, located at 80 Route 304 in Nanuet, New York, from at least 1946 through 1990.

377.    Miele Sanitation transported and disposed of waste from Schultz Ford Mercury at the Site at least three times per week.

378.    Upon information and belief, Schultz Ford Mercury's likely waste streams consisted of automotive service and repair waste, cafeteria waste, car parts, maintenance waste, office waste, oil cans, packaging waste and paint cans, which likely contained hazardous substances such as acetone, benzene, cadmium, chromium, dichloroethylene, ethyl benzene, lead, manganese, methyl ethyl ketone, methylene chloride, nickel, perchloroethylene, toluene,

trichloroethane, trichloroethylene, vinyl chloride, xylenes and/or zinc.

379.    By letter dated May 19, 2009, the Clarkstown Landfill JDG demanded that Schultz Ford Lincoln pay its equitable share of response costs pursuant to Sections 107(a) and 113(f)(1) of CERCLA and common law.

380.    To date, Schultz Ford Lincoln has not paid its equitable share of Site response costs.

381.    Third-Party Defendant Solitron Devices, Inc. ("Solitron") is a manufacturer of diodes, microwave products, power semiconductors and hybrids and other electrical components, who generated waste streams containing hazardous substances that were disposed of at the Site by Miele Sanitation.

382.    Solitron operated a facility within five miles of the Site, located at 256 Oak Tree Road in Tappan, New York, from at least 1961 to 1985.

383.    In addition to other waste streams, Miele Sanitation transported at least eleven, 55-gallon drums of oily substances from Solitron to the Site on or about October 27, 1979.

384.    Upon information and belief, Solitron's waste streams consisted of drums of oily substances, electrical component waste, maintenance waste, metal fabrication waste, office waste and packaging waste, which likely contained hazardous substances such as acetone, benzene, cadmium, chromium, copper, dichloroethylene, lead, methyl ethyl ketone, methylene chloride, nickel, perchloroethylene, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylenes and/or zinc.

385.    By letter dated March 17, 2010, the Clarkstown Landfill JDG demanded that Solitron pay its equitable share of response costs pursuant to Sections 107(a) and 113(f)(1) of CERCLA and common law.

386.   To date, Solitron has not paid its equitable share of Site response costs.

387.   Third-Party Defendant Star Kay White, Inc. ("Star Kay") is a manufacturer of ice cream and food flavoring ingredients who generated waste streams containing hazardous substances that were disposed of at the Site by Round Lake Sanitation Corp.

388.   Star Kay operated at least two facilities within five miles of the Site, located at 75 Brenner Drive and 85 Brenner Drive in Congers, New York, from at least 1984 through 1990.

389.   Round Lake Sanitation transported and disposed of at least two dumpster loads of waste from Star Kay each month at the Site.

390.   Upon information and belief, Star Kay's waste streams consisted of food processing waste, maintenance waste, office waste, out-of-date food products, packaging waste and plastic, which likely contained hazardous substances such as acetone, benzene, cadmium, chromium, copper, dichlorobenzene, dichloroethylene, lead, methyl ethyl ketone, methylene chloride, perchloroethylene, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylenes and/or zinc.

391.   By letter dated May 19, 2009, the Clarkstown Landfill JDG demanded that Star Kay pay its equitable share of response costs pursuant to Sections 107(a) and 113(f)(1) of CERCLA and common law.

392.   To date, Star Kay has not paid its equitable share of Site response costs.

393.   Third-Party Defendant Swivelier Co., Inc. ("Swivelier") is a manufacturer of adjustable lighting fixtures and conductive wiring devices, who generated waste streams containing hazardous substances that were disposed of at the Site by R&R Carting Disposal, Inc. and Marangi Bros., Inc.

394.   Swivelier operated a facility within five miles of the Site, located at 33 Route 304

in Nanuet, New York, from at least 1947 through 1990.

395.    Upon information and belief, Swivelier's waste streams consisted of chemicals, electrical component waste, maintenance waste, metal fabrication waste, office waste, packaging waste, paints, scrap metal, solvents and thinners, which likely contained hazardous substances such as acetone, benzene, cadmium, chromium, copper, dichloroethylene, lead, manganese, methyl ethyl ketone, methylene chloride, nickel, perchloroethylene, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylenes and/or zinc.

396.    By letter dated March 17, 2010, the Clarkstown Landfill JDG demanded that Swivelier pay its equitable share of response costs pursuant to Sections 107(a) and 113(f)(1) of CERCLA and common law.

397.    To date, Swivelier has not paid its equitable share of Site response costs.

398.    Third-Party Defendant The TJX Companies, Inc. ("TJX") is the parent company and/or successor to Marshall's Department Store, a clothing and home-goods retailer who generated waste streams containing hazardous substances that were disposed of at the Site by Miele Sanitation.

399.    Upon information and belief, the Marshall's Department Store's waste streams consisted of cafeteria waste, maintenance waste, office waste, packaging materials and retail waste, which likely contained hazardous substances such as acetone, benzene, cadmium, dichloroethylene, lead, mercury, methyl ethyl ketone, methylene chloride, perchloroethylene, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylenes and/or zinc.

400.    By letter dated May 19, 2009, the Clarkstown Landfill JDG demanded that TJX pay its equitable share of response costs pursuant to Sections 107(a) and 113(f)(1) of CERCLA and common law.

401.    To date, TJX has not paid its equitable share of Site response costs.

402.    Third-Party Defendant Tappan Wire & Cable, Inc. ("Tappan Wire") is a manufacturer of custom engineered wire and cable who generated waste streams containing hazardous substances that were disposed of at the Site.

403.    Tappan Wire operated a facility located at 256 Oak Tree Road in Tappan, New York, from at least 1978 through 1990.

404.    Upon information and belief, Tappan Wire's waste streams consisted of electrical component waste, maintenance waste, metal fabrication waste, office waste and packaging waste, which likely contained hazardous substances such as acetone, benzene, cadmium, chromium, copper, dichloroethylene, lead, manganese, methyl ethyl ketone, methylene chloride, nickel, perchloroethylene, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylenes and/or zinc.

405.    By letter dated May 19, 2009, the Clarkstown Landfill JDG demanded that Tappan Wire pay its equitable share of response costs pursuant to Sections 107(a) and 113(f)(1) of CERCLA and common law.

406.    To date, Tappan Wire has not paid its equitable share of Site response costs.

407.    Third-Party Defendant Tele-Vue Optics, Inc. ("Tele-Vue Optics") is a manufacturer of projection optic lenses, telescopes, eyepieces and imaging accessories who generated waste streams containing hazardous substances that were disposed of at the Site.

408.    Tele-Vue Optics operated a facility located at 15 Green Hill Lane in Spring Valley, New York, from at least 1977 to 1986.

409.    Tele-Vue Optics operated another facility within five miles of the Site, located at 20 Dexter Plaza in Pearl River, New York, from at least 1986 to 1988.

410.     Upon information and belief, Tele-Vue Optics' waste streams consisted of glass fabrication waste, maintenance waste, metal fabrication waste, metal finishing waste, office waste and packaging waste, which likely contained hazardous substances such as acetone, barium, benzene, cadmium, chromium, copper, dichloromethane, lead, manganese, methyl ethyl ketone, methylene chloride, nickel, perchloroethylene, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylenes and/or zinc.

411.     By letter dated May 18, 2009, the Clarkstown Landfill JDG demanded that Tele-Vue Optics pay its equitable share of response costs pursuant to Sections 107(a) and 113(f)(1) of CERCLA and common law.

412.     To date, Tele-Vue Optics has not paid its equitable share of Site response costs.

413.     Third-Party Defendant Tri-Seal International Inc. ("Tri-Seal International") is a manufacturer of polyethylene strips, rods and tubing for commercial applications who generated waste streams containing hazardous substances that were disposed of at the Site by Suburban Carting Corp.

414.     Tri-Seal International operated a facility within five miles of the Site, located at 217 Bradley Hill Road in Blauvelt, New York, from at least 1984 to 1989.

415.     Upon information and belief, Tri-Seal International's waste streams consisted of fabrication waste, maintenance waste, office waste, packaging waste and plastic fabrication waste, which likely contained hazardous substances such as acetone, benzene, cadmium, copper, dichloroethylene, lead, methyl ethyl ketone, methylene chloride, perchloroethylene, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylenes and/or zinc.

416.     By letter dated August 13, 2009, the Clarkstown Landfill JDG demanded that Tri-Seal International pay its equitable share of response costs pursuant to Sections 107(a) and

113(f)(1) of CERCLA and common law.

417.    To date, Tri-Seal International has not paid its equitable share of Site response costs.

418.    Alternatively, Third-Party Defendants Tri-Seal Holdings, Inc. ("Tri-Seal Holdings") is also known as and/or is the successor to Tri-Seal International and is responsible for the waste stream attributable to Tri-Seal International, as alleged in paragraph no. 415 above.

419.    To date, Tri-Seal Holdings has not paid its equitable share of Site response costs.

420.    Alternatively, Third-Party Defendant Tekni-Plex, Inc. ("Tekni-Plex") is the successor to Tri-Seal International and is responsible for the waste streams attributable to Tri-Seal International, as alleged in paragraph no. 415 above.

421.    To date, Tekni-Plex has not paid its equitable share of Site response costs.

422.    Third-Party Defendant Triple G Construction Corp. ("Triple G Construction") is a general contractor involved in the construction and remodeling of residential homes who selected the Site for disposal, and who transported and disposed of waste streams containing hazardous substances at the Site; and/or who generated waste streams containing hazardous substances that were disposed of at the Site.

423.    Triple G Construction is listed on the User's List for the Site as an entity who used the Site to dispose of waste.

424.    Upon information and belief, Triple G Construction's waste streams consisted of construction waste, demolition waste, maintenance waste, office waste and packaging waste, which likely contained hazardous substances such as acetone, benzene, cadmium, chromium, copper, dichloroethylene, lead, methyl ethyl ketone, methylene chloride, nickel, perchloroethylene, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylenes and/or

zinc.

425.    By letter dated May 19, 2009, the Clarkstown Landfill JDG demanded that Triple G Construction pay its equitable share of response costs pursuant to Sections 107(a) and 113(f)(1) of CERCLA and common law.

426.    To date, Triple G Construction has not paid its equitable share of Site response costs.

427.    Third-Party Defendant U.S. Polychemical Corp. ("U.S. Polychemical") is a manufacturer of deodorizers, degreasers, solvent degreasers, polychem concentrate cleaners, chlorinated solvents and other industrial solvents who generated waste streams containing hazardous substances that were disposed of at the Site by C&A Carbone.

428.    U.S. Polychemical operated a facility within five miles of the Site, located at 584 South Main Street in Spring Valley, New York, from at least 1977 through 1990.

429.    Upon information and belief, U.S. Polychemical's waste streams consisted of cafeteria waste, empty metal containers, empty plastic containers, industrial solvents, industrial waste, maintenance waste, office waste and packaging waste, which likely contained hazardous substances such as acetone, benzene, cadmium, dichloroethylene, lead, methyl ethyl ketone, methylene chloride, perchloroethylene, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylenes and/or zinc.

430.    To date, U.S. Polychemical has not paid its equitable share of Site response costs.

431.    Third-Party Defendant USG Corp. ("USG") is the successor to United States Gypsum Co. ("United States Gypsum"), a manufacturer of gypsum-based wallboard and other products for commercial and residential applications who generated waste streams containing hazardous substances that were disposed of at the Site.

432.    United States Gypsum operated a facility located at Main Street in Stony Point, New York, from at least 1966 through 1990.

433.    Upon information and belief, United States Gypsum's waste streams consisted of cafeteria waste, hard rock mineral fabrication waste, industrial waste, maintenance waste, office waste and packaging waste, which likely contained hazardous substances such as acetone, benzene, cadmium, copper, dichloroethylene, lead, methyl ethyl ketone, methylene chloride, perchloroethylene, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylenes and/or zinc.

434.    By letter dated May 19, 2009, the Clarkstown Landfill JDG demanded that USG pay its equitable share of response costs pursuant to Sections 107(a) and 113(f)(1) of CERCLA and common law.

435.    To date, USG has not paid its equitable share of Site response costs.

436.    Third-Party Defendant United Rockland Stairs Co. ("United Rockland Stairs") is a manufacturer of commercial and residential stair and rail systems who selected the Site for disposal, and who transported and disposed of waste streams containing hazardous substances at the Site; and/or who generated waste streams containing hazardous substances that were disposed of at the Site by Marangi Brothers, Inc.

437.    United Rockland Stairs operated a facility located on Airmont Road in Tallman, New York, from at least 1961 to 1990.

438.    United Rockland Stairs transported and disposed of approximately 155 loads of waste containing hazardous substances at the Site from December 11, 1987 through September 19, 1988.

439.    Upon information and belief, United Rockland Stairs' waste streams consisted of

construction waste, maintenance waste, metal fabrication waste, municipal solid waste and office waste, which likely contained hazardous substances such as acetone, benzene, cadmium, chromium, copper, dichloroethylene, lead, manganese, methyl ethyl ketone, methylene chloride, nickel, perchloroethylene, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylenes and/or zinc.

440.    By letter dated May 19, 2009, the Clarkstown Landfill JDG demanded that United Rockland Stairs pay its equitable share of response costs pursuant to Sections 107(a) and 113(f)(1) of CERCLA and common law.

441.    To date, United Rockland Stairs has not paid its equitable share of Site response costs.

442.    Third-Party Defendant Utility Engineering Co. ("Utility Engineering") is a manufacturer of point-of-purchase metal wire store displays who generated waste streams containing hazardous substances that were disposed of at the Site.

443.    Utility Engineering operated a facility within five miles of the Site, located at 36 Walter Street in Pearl River, New York, from at least 1984 to 1989.

444.    Upon information and belief, Utility Engineering's waste streams consisted of maintenance waste, metal fabrication waste, office waste, packaging waste and plastic fabrication waste, which likely contained hazardous substances such as acetone, benzene, cadmium, chromium, copper, dichloroethylene, lead, manganese, methyl ethyl ketone, methylene chloride, nickel, perchloroethylene, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylenes and/or zinc.

445.    By letter dated May 19, 2009, the Clarkstown Landfill JDG demanded that Utility Engineering pay its equitable share of response costs pursuant to Sections 107(a) and 113(f)(1)

of CERCLA and common law.

446.   To date, Utility Engineering has not paid its equitable share of Site response costs.

447.   Third-Party Defendant Village of South Nyack, New York ("Village of South Nyack") is a village in the town of Orangetown in Rockland County, New York, who generated waste streams containing hazardous substances that were disposed of at the Site by Martens Rubbish Removal, Inc., Mike Araneo, Inc., Quinton James Trucking Co., Clarkstown Carting, 5-Town Sanitation, Carlo Minuto, Anthony Tripi and Monsey Carting.

448.   According to certified responses submitted by the Superintendent of the Village of South Nyack to NYDEC dated April 25, 2005, all waste collected by the Village of South Nyack from at least 1961 through 1990 was disposed of at the Site.

449.   The Village of South Nyack is listed on the User's List for the Site as an entity who used the Site to dispose of waste.

450.   Upon information and belief, the Village of South Nyack's waste streams consisted of at least cafeteria waste, construction waste, household debris, maintenance waste, municipal solid waste, office waste, packaging waste and road sweepings, which likely contained hazardous substances such as acetone, asbestos, benzene, benzo(a)anthracene, benzo(a)pyrene, cadmium, chromium, cobalt, copper, cresol, dichloroethylene, ethyl benzene, flourene, lead, manganese, methyl ethyl ketone, methylene chloride, nickel, perchloroethylene, phenanthrene, silver, tin, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylenes and/or zinc.

451.   By letter dated November 19, 2009, the Clarkstown Landfill JDG demanded that the Village of South Nyack pay its equitable share of response costs pursuant to Sections 107(a) and 113(f)(1) of CERCLA and common law.

452.   To date, the Village of South Nyack has not paid its equitable share of Site

response costs.

453.    Third-Party Defendant Village of Suffern, New York ("Village of Suffern") is a village in the town of Ramapo in Rockland County, New York, who generated waste streams containing hazardous substances, which were transported to the Site by the Village of Suffern itself and by Transfer Technologies, Inc.

454.    The Village of Suffern's waste streams were also transported to the Ramapo Transfer Station by the Village of Suffern itself and by Transfer Technologies, Inc., during a time period when baled waste from the Ramapo Transfer Station was transported and disposed of at the Site.

455.    The Village of Suffern is listed on the User's List for the Site as an entity who used the Site to dispose of waste.

456.    Upon information and belief, the Village of Suffern's waste streams consisted of at least cafeteria waste, construction waste, household debris, maintenance waste, municipal solid waste, office waste, packaging waste and road sweepings, which likely contained hazardous substances such as acetone, asbestos, benzene, benzo(a)anthracene, benzo(a)pyrene, cadmium, chromium, cobalt, copper, cresol, dichloroethylene, ethyl benzene, flourene, lead, manganese, methyl ethyl ketone, methylene chloride, nickel, perchloroethylene, phenanthrene, silver, tin, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylenes and/or zinc.

457.    By letter dated November 18, 2009, the Clarkstown Landfill JDG demanded that the Village of Suffern pay its equitable share of response costs pursuant to Sections 107(a) and 113(f)(1) of CERCLA and common law.

458.    To date, the Village of Suffern has not paid its equitable share of Site response costs.

459.     Third-Party Defendant Village of Tarrytown, New York ("Village of Tarrytown") is a village in the town of Greenburgh in Westchester County, New York who selected the Site for disposal, and who transported and disposed of waste streams containing hazardous substances at the Site; and/or who generated waste streams containing hazardous substances that were disposed of at the Site.

460.     Under an agreement between the Village of Tarrytown and the Town of Clarkstown, the Village of Tarrytown's waste was transported and disposed of at the Site from at least November 1981 through December 1983.

461.     Upon information and belief, the Village of Tarrytown's waste streams consisted of at least cafeteria waste, construction waste, household debris, maintenance waste, municipal solid waste, office waste, packaging waste and road sweepings, which likely contained hazardous substances such as acetone, asbestos, benzene, benzo(a)anthracene, benzo(a)pyrene, cadmium, chromium, cobalt, copper, cresol, dichloroethylene, ethyl benzene, flourene, lead, manganese, methyl ethyl ketone, methylene chloride, nickel, perchloroethylene, phenanthrene, silver, tin, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylenes and/or zinc.

462.     By letter dated November 17, 2009, the Clarkstown Landfill JDG demanded that the Village of Tarrytown pay its equitable share of response costs pursuant to Sections 107(a) and 113(f)(1) of CERCLA and common law.

463.     To date, the Village of Tarrytown has not paid its equitable share of Site response costs.

464.     Third-Party Defendant W. Harris & Son, Inc. ("W. Harris & Son") is a general contractor engaged in commercial and residential construction and excavation activities who selected the Site for disposal, and who transported and disposed of waste streams containing

hazardous substances at the Site; and/or who generated waste streams containing hazardous substances that were disposed of at the Site by W. Harris & Son, Albert Schite and Marangi Bros.

465.    W. Harris & Son operated a facility located on West Crooked Hill Road in Pearl River, New York, from at least 1978 to 1984.

466.    W. Harris & Son operated another facility within five miles of the Site, located at 37 West Washington Avenue in Pearl River, New York, from at least 1984 through 1990.

467.    W. Harris & Son is listed on the User's List for the Site as an entity who used the Site to dispose of waste.

468.    Upon information and belief, W. Harris & Son's waste streams consisted of concrete, construction waste, demolition waste, excess soil, maintenance waste, municipal solid waste, office waste and tree stumps, which likely contained hazardous substances such as acetone, benzene, cadmium, chromium, copper, dichloroethylene, lead, methyl ethyl ketone, methylene chloride, nickel, perchloroethylene, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylenes and/or zinc.

469.    By letter dated May 19, 2009, the Clarkstown Landfill JDG demanded that W. Harris & Son pay its equitable share of response costs pursuant to Sections 107(a) and 113(f)(1) of CERCLA and common law.

470.    To date, W. Harris & Son has not paid its equitable share of Site response costs.

471.    Third-Party Defendant Ward Pavements, Inc. ("Ward Pavements") is a general contractor involved in residential and commercial construction and roadway repair, paving and surfacing operations who selected the Site for disposal, and who transported and disposed of waste streams containing hazardous substances at the Site; and/or who generated waste streams

containing hazardous substances that were disposed of at the Site.

472.    Ward Pavements operated a facility located on Riverside Avenue in Haverstraw, New York.

473.    Upon information and belief, Ward Pavements' waste streams consisted of construction waste, demolition waste, maintenance waste, office waste and packaging waste, which likely contained hazardous substances such as acetone, benzene, cadmium, chromium, copper, dichloroethylene, lead, methyl ethyl ketone, methylene chloride, nickel, perchloroethylene, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylenes and/or zinc.

474.    By letter dated May 19, 2009, the Clarkstown Landfill JDG demanded that Ward Pavements pay its equitable share of response costs pursuant to Sections 107(a) and 113(f)(1) of CERCLA and common law.

475.    To date, Ward Pavements has not paid its equitable share of Site response costs.

476.    Third-Party Defendant Xerox Corp. ("Xerox") is a manufacturer of electrostatic copiers and copier parts who generated waste streams containing hazardous substances that were disposed of at the Site by Miele Sanitation.

477.    Xerox operated a facility within five miles of the Site, located on Route 303 in Blauvelt, New York, from at least 1965 to 1979.

478.    Upon information and belief, Xerox's waste streams consisted of cafeteria waste, chlorinated solvents, electrical component waste, ink waste, maintenance waste, metal fabrication waste, office waste, packaging waste and printing waste, which likely contained hazardous substances such as acetone, benzene, cadmium, chromium, copper, dichloroethylene, lead, manganese, methyl ethyl ketone, methylene chloride, nickel, perchloroethylene, toluene,

trichloroethane, trichloroethylene, vinyl chloride, xylenes and/or zinc.

479.    By letter dated May 21, 2009, the Clarkstown Landfill JDG demanded that Xerox pay its equitable share of response costs pursuant to Sections 107(a) and 113(f)(1) of CERCLA and common law.

480.    To date, Xerox has not paid its equitable share of Site response costs.

**FIRST CLAIM FOR RELIEF**
**CONTRIBUTION UNDER CERCLA**

481.    The Clarkstown Landfill JDG realleges and incorporates by reference paragraph nos. 1 through 480 of this Third-Party Complaint as if fully restated herein.

482.    The Site is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

483.    Among the chemicals that were released and that are threatened to be released into the environment from the Site are hazardous substances consistent with the combination of municipal solid waste, commercial waste, construction/demolition waste, and industrial waste disposed of at the Site, which hazardous substances contaminated the environment, including soils, surface waters, and groundwater, within the meaning of CERCLA, 42 U.S.C. §§ 9601(8), 9601(14) and 9601(22).

484.    The release and threatened release of hazardous substances have caused the State to incur and reimburse the Town for response costs, and to continue incurring response costs, within the meaning of CERCLA, 42 U.S.C. § 9601(25), including costs to assess, monitor, evaluate, oversee and conduct remedial and removal actions in response to the release and threatened release of hazardous substances.

485.    The response costs mentioned above are costs of removal or remedial action within the meaning of CERCLA, 42 U.S.C. §§ 9601(23), (24), (25), (31) and 42 U.S.C. §

9607(a). The State is entitled to recover all such response costs from responsible persons as they were incurred for removal and remedial actions not inconsistent with the National Oil and Hazardous Substances Pollution Contingency Plan, 40 C.F.R. Part 300.

486. Pursuant to CERCLA, 42 U.S.C. § 9607(a), Third-Party Defendants are liable as transporters of hazardous substances who selected the Site for the disposal of these hazardous substances, and who did dispose of these hazardous substances at the Site; and/or as arrangers or generators of materials containing hazardous substances, which materials were disposed at the Site.

487. Sections 113(f)(1) and (3)(B) of CERCLA, 42 U.S.C. §§ 9613(f)(1) and (3)(B), provide, in relevant part, that:

> Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) . . . .

> A person who has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement may seek contribution from any person who is not party to a settlement . . . .

488. The Clarkstown Landfill JDG and its assignors have resolved their liability to the State of New York for matters covered in the underlying action.

489. All Third-Party Defendants are liable parties under CERCLA, but have not resolved their liability to either the State of New York, the Clarkstown Landfill JDG or any of its assignors.

490. The Clarkstown Landfill JDG is entitled to contribution from all Third-Party Defendants under Section 113(f)(1) of CERCLA, 42 U.S.C. § 9613(f)(1), for Third-Party Defendants' respective equitable shares of all costs and damages incurred by the Clarkstown Landfill JDG and its assignors, including applicable interest as provided for in Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

WHEREFORE, the Clarkstown Landfill JDG respectfully requests that this Court enter judgment pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), in favor of the Clarkstown Landfill JDG and against all Third-Party Defendants holding all Third-Party Defendants liable for their respective fair and equitable share of the response costs incurred or to be incurred by the Clarkstown Landfill JDG, plus all pre-judgment interest, in connection with the release and/or threatened release of hazardous substances at the Clarkstown Landfill Site. The Clarkstown Landfill JDG further requests that this Court award interest and costs of suit, including reasonable attorneys' fees and consultant fees as permitted by law; and order any such other relief as the Court may deem just and proper.

## SECOND CLAIM FOR RELIEF
## DECLARATORY RELIEF UNDER CERCLA

491.    The Clarkstown Landfill JDG realleges and incorporates by reference paragraph nos. 1 through 490 of this Third-Party Complaint as if fully restated herein.

492.    There is a present and actual controversy between the Clarkstown Landfill JDG and all Third-Party Defendants concerning their respective rights and obligations with respect to the response costs associated with the Clarkstown Landfill Site.

493.    Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), provides, in relevant part, that:

> In any such action described in this subsection, the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages.  A subsequent action or actions under section 9607 of this title for further response costs at the vessel or facility may be maintained at any time during the response action, but must be commenced no later than 3 years after the date of completion of all response action.  Except as otherwise provided in this paragraph, an action may be commenced under section 9607 of this title for recovery of costs at any time after such costs have been incurred.

494.     The Clarkstown Landfill JDG seek a declaratory judgment under Section 113 (g)(2) of CERCLA, 42 U.S.C. § 9613 (g)(2), against all Third-Party Defendants holding them liable for their respective equitable shares of response costs, that will be binding in any subsequent action to recover further response costs.

495.     The Clarkstown Landfill JDG is further entitled to a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202, declaring the Clarkstown Landfill JDG's rights against all Third-Party Defendants.

496.     The Clarkstown Landfill JDG is entitled to judgment against all Third-Party Defendants for past and future response costs incurred in connection with the Clarkstown Landfill Site.

WHEREFORE, the Clarkstown Landfill JDG respectfully request that this Court enter a declaratory judgment against all Third-Party Defendants finding that they are each liable under Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), and Section 28 U.S.C. §§ 2201 and 2202, and are obligated to pay for their equitable shares of all past and future response costs, plus interest, associated with the Clarkstown Landfill Site.  The Clarkstown Landfill JDG further requests that this Court award interest and costs of suit, including reasonable attorneys' fees and consultant fees as permitted by law; and order any such other relief as the Court may deem just and proper.

Dated:  July 25, 2013                    Respectfully submitted,

                                         THE JUSTIS LAW FIRM LLC


                                         /s/ Gary D. Justis
                                         _____

                                         Gary D. Justis          admitted *pro hac vice*
                                         Joshua Bailey           admitted *pro hac vice*
                                         5251 W. 116th Place
                                         Suite 200
                                         Leawood, KS  66211-7820
                                         Telephone:  (913) 998-6100
                                         Facsimile:  (913) 998-6101
                                         Email:  gjustis@justislawfirm.com
                                                 jbailey@justislawfirm.com

                                         ATTORNEYS FOR THIRD-PARTY PLAINTIFF
                                         CLARKSTOWN LANDFILL JOINT DEFENSE
                                         GROUP