UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STATE OF NEW YORK, et al.,

                Plaintiffs,

      v.

TOWN OF CLARKSTOWN, et al.

                Defendants.

ALLIED WASTE NORTH AMERICA INC., et al.,

                Settling Defendants/
                Third-Party Plaintiffs,

     v.

AM COSMETICS CORP. et al.,

                Third-Party Defendants.

No. 11-CV-0293

OPINION AND ORDER

Appearances:

Gary D. Justis, Esq.
Joshua L. Bailey, Esq.
The Justis Law Firm LLC
Leakwood, KS
*Counsel for Third-Party Plaintiffs*

Gary S. Graifman, Esq.
Kantrowitz Goldhamer & Graifman, P.C.
Chestnut Ridge, NY
*Counsel for Third-Party Defendant*
*Aalborg Instruments & Controls, Inc.*

Debra L. Rothberg, Esq.
Richman & Levine, P.C.
Garden City, NY
*Counsel for Third-Party Defendants*

*Balfour Beatty,*
*Schultz Ford Lincoln Inc., and*
*Star Kay White, Inc.*

Donald S. Tracy, Esq.
Tracy and Edwards
New City, NY
*Counsel for Third-Party Defendant*
*Miele Sanitation Co.*

Richard J.J. Scarola, Esq.
Scarola Malone & Zubatov LLP
New York, NY
*Counsel for Third-Party Defendant*
*Opticon, Inc.*

Ronald W. Zdrojeski, Esq.
Sutherland Asbill & Brennan
New York, NY
*Counsel for Third-Party Defendant*
*Tappan Wire & Cable, Inc.*

Erich Gleber, Esq.
Segal McCambrige Singer & Mahoney
New York, NY
*Counsel for Third-Party Defendant*
*Ward Pavements, Inc.*

KENNETH M. KARAS, District Judge:

Third-Party Plaintiffs Allied Waste North America Inc., for itself and its subsidiaries,

including, without limitation, American Disposal Services of New Jersey, Inc. and BFI Waste

Systems of New Jersey, Inc., and insofar as it and its subsidiaries are alleged to be a successor to

Vincent Ippolito, Inc. and Round Lake Sanitation Corp., Barr Laboratories, Inc., Betcon

Dickinson and Co., Chromalloy New York, Division of Chromalloy Gas Turbine Corp.,

Chromalloy Gas Turbine LLC, Clarkstown Central School District, Consolidated Rail Corp.,

County Asphalt, Inc., County of Rockland Highway Department, Evonik Corporation, as

successor to Dynamit Nobel of America, Fisher Scientific Co. LLC, Ford Motor Co., Gannett

Satellite Information Network, Inc., d/b/a the Journal News, International Paper Co., Momentive Specialty Chemicals, Inc. (f/k/a Borden Chemical Inc.), Nyack Hospital, Orange and Rockland Utilities, Inc., Pfizer Inc. for itself and its subsidiaries including, without limitation, Wyeth Holdings Corp. acting through Wyeth Pharmaceuticals (Lederle Laboratories), Rockland County Sewer District No. 1, Sanitary Waste Carriers, Inc., Thomas Milo, as indemnitor to Suburban Carting Corp., Town of Orangetown, New York, United Water New Jersey Inc., Waste Management of New York, LLC and Marangi Bros., Inc., and Wikoff Color Corp. (collectively the "Joint Defense Group ('JDG')" or "Third-Party Plaintiffs"), filed the instant Complaint seeking contribution under § 113(f) of the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended ("CERCLA") from Third-Party Defendants for their alleged equitable share of all costs and damages incurred by the Third-Party Plaintiffs at the Clarkstown Landfill Site located in the Hamlet of West Nyack in the Town of Clarkstown, County of Rockland, State of New York (the "Site"), and a declaratory judgment pursuant to § 113(g)(2) of CERCLA against Third-Party Defendants holding them liable for their respective equitable shares of response costs at the Site.  (*See* Am. Third-Party Compl. ("ATPC") (Dkt. No. 97).)[1]

---

[1] The ATPC names the following parties, many of which have settled this Action or are not otherwise at issue in this Motion, as Third-Party Defendants: AM Cosmetics Corp.; Markwins International Corp.; Aalborg Instruments & Controls, Inc.; Alstom Inc.; American Imperial Screw Corp.; Aristo Import Co., Inc; Arri Inc.; Balfour Beatty; Bel-Bee Products, Inc.; Borough of NorthVale, New Jersey; C & A Carbone, Inc.; CVS Caremark Corp.; Cadie Products Corp.; Capasso Carting Co. Inc.; Advanced Disposal Services, Inc.; Carlo Minuto Carting Co. Inc.; Clarkstown Carting Co., Inc.; Cornetta's Restaurant & Marina Inc.; Dairylea Cooperative Inc.; Damiani Sanitation, Inc.; Development Enterprises, Inc.; Eastman Chemical Co.; Edroy Products Co., Inc.; Frank Capasso, Inc.; Frank J. Tucek & Sons, Inc.; Frank Valerio General Contracting Corp.; Gabriel Manufacturing Co.; General Bearing Corp.; Getty Properties Corp.; Hedwin Corp.; Helmer-Cronin Construction, Inc.; Hiltronics Corp.; Illinois Tool Works Inc.; Inertia Switch, Inc.; International Advanced Materials, Inc.; International Business Machines Corp.; Interstate Waste Services Inc.; Ira D. Conklin & Sons, Inc.; Conklin Services &

Before the Court is a Motion to Dismiss the ATPC pursuant to Federal Rule of Civil Procedure 12(b)(6) and Federal Rule of Civil Procedure 12(c) on behalf of Third-Party Defendants Aalborg Instruments & Controls, Inc. ("Aalborg"), Balfour Beatty ("Balfour Beatty"), Miele Sanitation, Co. ("Miele Sanitation"), Opticon, Inc. ("Opticon"), Schultz Ford Lincoln, Inc. ("Schultz Ford Lincoln"), Star Kay White, Inc. ("Star Kay White"), Tappan Wire & Cable, Inc. ("Tappan Wire"), and Ward Pavements, Inc. ("Ward Pavements") (collectively "Movants").  (*See* Dkt. No. 289.)[2]  For the following reasons, Movants' Motion is granted as to Balfour Beatty, and denied as to Aalborg, Miele Sanitation, Opticon, Schultz Ford Lincoln, Star Kay White, Tappan Wire, and Ward Pavements.

## I.  Background

### A.  Factual Background

The following are the facts drawn from the ATPC, taken as true for the purpose of resolving the instant Motion, and the procedural history of the underlying Action in this case.

---

Construction Inc.; Jomar Industries Inc.; Julius Petersen Boatyard; Kenneth Hiep, Inc.; Larson-Metercraft Inc.; Louis Hornick & Co.; Macy's East, Inc.; Mancuso Construction & Remodeling Corp.; Materials Research Corp.; Praxair Surface Technologies, Inc.; Miele Sanitation Co.; Monsey Carting Co., Inc.; Omni Waste Services, Inc.; Opticon, Inc.; PSC, LLC; Par Pharmaceutical, Inc.; Pat Nazzaro Disposal, Inc.; Perillo Sanitation Co., Inc.; Anthony Carting, Inc.; Plastic-Craft Products Corp.; Rexel Inc.; Rockland County Iron Works, Inc.; Rockland Insulated Wire & Cable Co.; Rossi Tool & Dies, Inc.; Seth Glasser & Co.; Schultz Ford Lincoln Inc.; Solitron Devices, Inc.; Star Kay White, Inc. Swivelier Co., Inc.; the TJX Companies, Inc.; Tappan Wire & Cable, Inc.; Tele-Vue Optics, Inc.; Tri-Seal International Inc.; Tri-Seal Holdings, Inc.; Tekni-Plex, Inc.; Triple G Construction Corp.; U.S. Polychemical Corp.; United Rockland Stairs Co.; Utility Engineering Co.; Village of South Nyack, New York; Village of Suffern, New York; W. Harris & Son, Inc.; Ward Pavements, Inc.; and Xerox Corp.

[2] American Imperial Screw Corp. ("American Imperial") Helmer-Cronin Construction, Inc. ("Helmer-Cronin"), Rockland Insulated Wire & Cable Co. ("Rockland Wire"), and Rossi Tool and Dies, Inc. ("Rossi"), originally joined in Third-Party Defendants' Motion To Dismiss the ATPC.  (*See* Dkt. No. 289.)  However, American Imperial, Helmer-Cronin, Rockland Wire, and Rossi entered into the Consent Decree as modified on March 17, 2015 as Settling Defendants.  (*See* Dkt. No. 473.)  The Court, therefore, does not consider them as Movants for the purpose of resolving the instant Motion.

The Site was an operating municipal landfill from the 1950s through 1990.  (ATPC ¶ 1.)  The Site received a combination of municipal solid waste, commercial waste, and industrial waste from a five-mile radius around the Site, as well as other areas outside such five-mile radius.  (*Id.*)  The Town of Clarkstown (the "Town") owned and operated the Site from the 1950s through 1990, during which time there was a release of hazardous substances at or from the Site.  (*Id.* ¶ 6.)

Pursuant to Environmental Conservation Law ("ECL") § 27-1305, the Site was listed on the State's Registry of Inactive Hazardous Waste Disposal Sites based on the release of hazardous substances at and from the Site.  (*Id.* ¶ 7.)  The Town and the New York State Department of Environmental Conservation ("NYSDEC") entered into a Consent Order that required the Town to undertake remedial actions required by the Record of Decision ("ROD") for the Site.  (*Id.* ¶ 8.)[3]  NYSDEC and the Town entered into a State Assistance Contract ("SAC") pursuant to the Environmental Quality Bond Act of 1986, whereby the State agreed to reimburse the Town for 75% of the eligible costs for investigation, remedial design, construction of the remedial action, and construction oversight to be incurred by the Town at the Site.  (*Id.* ¶ 9.)  The Town implemented response measures at the Site to remedy the alleged release and/or threatened release of hazardous substances into the environment, and incurred response costs which have been partially reimbursed by the State, including, but not limited to, costs of investigation, removal, remedial activity, and operation and maintenance, as those terms are defined or used in CERCLA §§ 9601(23), 9601(24), 9601(25), 9607(a), and 9613, in relation to the Site.  (*Id.* ¶ 10.)

---

[3] The Record of Decision ("ROD") "presents the remedial action plan for an inactive hazardous waste disposal site and documents the information and rationale used to arrive at the decision."  Record of Decision (ROD), New York State Department of Environmental Conservation, http://www.dec.ny.gov/chemical/8657.html (last visited March 27, 2015).

On March 21, 2011, after several years of negotiations, the State, the Town, the JDG (and its assignors), entered into a Consent Decree.  (*Id.* ¶ 11.)  The Consent Decree was modified on January 23, 2012 to add several more entities as Settling Defendants, which reduced the amount the settling defendants, including the JDG and its assignors, but not including the Town, were required to pay to the State from $4,000,000 to $3,750,000.  (*Id.* ¶ 12.)  Pursuant to the Consent Decree, the settling defendants, including the JDG and its assignors, but not including the Town, have paid three installment payments totaling $3,750,000 to the State to settle the State's claims at the Site, and the JDG has incurred and will continue to incur additional recoverable response costs, including attorneys' fees and expenses that are closely tied to the response actions at the Site.  (*Id.* ¶¶ 13–14.)

Each member of the JDG is a settling defendant and a signatory to the Consent Decree. (*Id.* ¶ 16.)  Moreover, the JDG members are the assignees of "all federal, state, local[,] and common law claims in connection with the Site" from several Settling Defendants "who are also (or will be) signatories to the . . . Consent Decree."  (*Id.* ¶ 17.)[4]  As indicated above, the JDG is comprised of members that are Third-Party Plaintiffs in this Action.

---

[4] The assignors, as alleged in the ATPC, are: Alcatel-Lucent USA Inc.; AmerTac for itself and AmerTac Holdings, Inc.; American Tack & Harware Co., Inc. and AT&H Co., Inc.; Avery Dennison Corporation; Avon Products, Inc.; Borough of Ringwood, New Jersey; Cosco Industries Inc.; East Ramapo Central School District; H. Pfanstiel Hardware Co., Inc.; Holt Construction Corporation; Huhtamaki, Inc.; Innovative Plastics Corporation; J. Fletcher Creamer & Son, Inc.; Machida America, Inc; Martin Marietta Materials, Inc.; Metal Improvement Co., LLC (f/k/a Metal Improvement Co., Inc.); Metropolitan Vacuum Cleaner Co. Inc.; Nanuet Union Free School District; Nestle Waters North America Inc.; New York State Department of Transportation; New York State Division of Military and Naval Affairs and New York National Guard; New York State Office of Mental Health; New York State Thruway Authority and Canal Corporation; Nice-Pak Products, Inc.; Novartis Corporation (f/k/a Ciba-Geigy Corporation); Nyack Union Free School District; Omni Waste Services, Inc.; Palisades Interstate Park Commission and New York State Office of Parks, Recreation, and Historic Preservation; Pat Nazzaro Disposal, Inc.; Pearl River School District; Pearson Education, Inc. (f/k/a Prentice Hall, Inc.); Plasti-Clad Metal Products, Inc.; Pulsafeeder, Inc.; Ramapo Central School District; Sears,

The ATPC alleges that each of the Third-Party Defendants arranged for disposal of hazardous substances at the Site and/or transported hazardous substances that were disposed of at the Site.  As relevant to the instant Motion, the ATPC alleges that Aalborg, a manufacturer of industrial flow meters, controllers, and valves, operated a facility within five miles of the Site, located at 382 Route 59, Tall Pines Industrial Park, Section 292 in Monsey, New York, and "generated waste streams containing hazardous substances that were disposed of at the Site." (*Id.* ¶¶ 30–31.)  Specifically, the ATPC alleges that "[u]pon information and belief, Aalborg's waste streams consisted of aluminum, brass[,] and stainless steel, electrical component waste, maintenance waste, metal fabrication waste, metal finishing waste, office waste[,] and packaging waste, which likely contained hazardous substances such as acetone, aluminum benzene, cadmium, chromium, copper, dichloroethylene, lead, manganese, methyl ethyl ketone, methylene chloride, nickel, perchloroethylene, toluene, trichloroethane, trichloroethylene, xylenes[,] and/or zinc." (*Id.* ¶ 32.)

The ATPC alleges that Balfour Beatty is the "successor" to Cablec Corp. ("Cablec"), a manufacturer and distributor of electric cable and wire for utilities, that operated a facility within five miles of the Site located at 17 Squadron Boulevard in New City, New York from at least 1983 through 1990, and generated waste streams containing hazardous substances that were disposed of at the Site.  (*Id.* ¶¶ 55–56.)  The ATPC alleges that "[u]pon information and belief,

---

Roebuck and Co.; South Orangetown Central School District; Thalle Construction Co.; Town of Greenburgh, New York; Town of Ramapo, New York; Uneeda Enterprizes, Inc.; Vale Inco Americas Inc.; Verizon New York Inc.; Village of Ardsley, New York; Village of Dobbs Ferry, New York; Village of Elmsford, New York; Village of Hastings-on-Hudson, New York; Village of Irvington, New York; Village of Nyack, New York; Village of Piermont, New York; Village of Spring Valley, New York; Village of Tarrytown, New York; Village of Upper Nyack, New York; Vision-Sciences, Inc.; Volkswagen Group of America, Inc.; Volvo Cars of North America, LLC; and Warriner Smith Utilities, Inc.  (ATPC ¶ 17.)  The Court notes that, pursuant to the Modified Consent Decrees, (*see* Dkt. Nos. 256, 285, 473), additional parties have been added as Settling Defendants.

Cablec's waste streams consisted of cafeteria waste, electrical component wastes, maintenance waste, office waste[,] and packaging waste, which likely contained hazardous substances such as acetone, benzene, cadmium, copper, dichloroethlene, lead, methyl ethyl ketone, methylene chloride, perchloroethylene, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylenes[,] and/or zinc." (*Id.* ¶ 57.)

The ATPC next alleges that Miele Sanitation "is a waste hauler" listed on the User's List for the Site as an entity who used the Site to dispose of waste, that selected the Site for disposal, and that transported and disposed of waste streams containing hazardous substances at the Site. (*Id.* ¶¶ 261–62.)  Specifically, the ATPC alleges that "[u]pon information and belief, the likely waste streams hauled to the Site by Miele Sanitation included at least auto body repair and auto repair wastes, cafeteria waste, construction waste, dry cleaner waste, electrical component and electrical wastes, food processing waste, hospital waste, maintenance waste, metal fabrication waste, metal finishing waste, metal processing waste, municipal solid waste, office waste, packaging waste, printing waste[,] and retail waste, which likely contained hazardous substances such as acetone, arsenic, asbestos, benzene, benzo(a)anthracene, benzo(a)pyrene, cadmium, chromium, copper, cresol, dichlorobenzene, dichloroethylene, ethyl benzene, flourene, lead manganese, mercury, methanol, methyl ethyl ketone, methylene chloride, nickel, perchloroethylene, phenanthrene, tin, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylenes[,] and/or zinc." (*Id.* ¶ 263.)

The ATPC alleges that Opticon, a manufacturer of laser and image scanners that operated a facility within five miles of the Site, located at 36 Ramland Road in Orangeburg, New York, generated waste streams containing hazardous substances that were disposed at the Site. (*Id.* ¶¶ 273–74.)  The ATPC states that "[u]pon information and belief, Opticon's waste streams

8

consisted of electrical component waste, maintenance waste, metal fabrication waste, office

waste[,] and packaging waste, which likely contained hazardous substances such as acetone,

benzene, cadmium, chromium, copper, dichloroethylene, lead, manganese, methyl ethyl ketone,

methylene chloride, nickel, perchloroethylene, toluene, trichloroethane, trichloroethylene, vinyl

chloride, xylenes[,] and/or zinc."  (*Id.* ¶ 275.)

  The ATPC alleges that Schultz Ford Lincoln is the successor to and/or is formerly known

as Schultz Ford Lincoln Mercury, Inc. ("Schultz Ford Mercury"), which is an automobile

dealership, service, and repair shop that generated waste streams containing hazardous

substances that were disposed of at the Site by Miele Sanitation.  (*Id.* ¶ 332.)  Schultz Ford

Mercury operated a facility within five miles of the Site, located at 80 Route 304 in Nanuet, New

York from at least 1946 through 1990, and Miele Sanitation allegedly transported and disposed

of waste from Schultz Ford Mercury at the Site at least three times per week.  (*Id.* ¶¶ 333–34.)

According to the ATPC, "[u]pon information and belief, Schultz Ford Mercury's likely waste

streams consisted of automotive service and repair waste, cafeteria waste, car parts, maintenance

waste, office waste, oil cans, packaging waste[,] and paint cans, which likely contained

hazardous substances such as acetone, benzene, cadmium, chromium, copper, dichloroethylene,

ethyl benzene, lead, manganese, methyl ethyl ketone, methylene chloride, nickel,

perchloroethylene, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylenes[,] and/or

zinc."  (*Id.* ¶ 335.)

  As to Star Kay White, a manufacturer of ice cream and food flavoring ingredients, the

ATPC alleges that it operated at least two facilities within five miles of the Site, located at 75

Brenner Drive and 85 Brenner Drive in Congers, New York, from at least 1984 through 1990,

and that Round Lake Sanitation Corp. ("Round Lake Sanitation") transported and disposed of at

least two dumpster loads of waste from Star Kay White each month at the Site.  (*Id.* ¶¶ 344–46.)
Accordingly, the ATPC alleges that Star Kay White generated waste streams containing
hazardous substances that were disposed of at the Site by Round Lake Sanitation.  (*Id.* ¶ 344.)
Specifically, the ATPC alleges that "[u]pon information and belief, Star Kay[] [White's] waste
streams consisted of food processing waste, maintenance waste,  office waste, out-of-date food
products, packaging waste[,] and plastic, which likely contained hazardous substances such as
acetone, benzene, cadmium, chromium, copper, dichlorobenzene, dichloroethylene, lead, methyl
ethyl ketone, methylene chloride, perchloroethylene, toluene, trichloroethane, trichloroethylene,
vinyl chloride, xylenes[,] and/or zinc."  (*Id.* ¶ 347.)

The ATPC alleges that Tappan Wire, a manufacturer of custom engineered wire and
cable that operated a facility located at 256 Oak Tree Road in Tappan, New York from at least
1978 through 1990, generated waste streams containing hazardous substances that were disposed
of at the Site.  (*Id.* ¶¶ 359–60.)  Specifically, the ATPC alleges that "[u]pon information and
belief, Tappan Wire's waste streams consisted of electrical component waste, maintenance
waste, metal fabrication waste, office waste[,] and packaging waste, which likely contained
hazardous substances such as acetone, benzene, cadmium, chromium, copper, dichloroethylene,
lead, manganese, methyl ethyl ketone, methylene chloride, nickel, perchloroethylene, toluene,
trichloroethane, trichloroethylene, vinyl chloride, xylenes[,] and/or zinc."  (*Id.* ¶ 361.)

Finally, the ATPC alleges that Ward Pavements, a general contractor involved in
residential and commercial construction and roadway repair, paving, and surfacing operations
that operated a facility on Riverside Avenue in Haverstraw, New York, selected the Site for
disposal, and transported and disposed of waste streams containing hazardous substances at the
Site, and/or generated waste streams containing hazardous substances that were disposed of at

the Site. (*Id.* ¶¶ 418–19.) The ATPC alleges that "[u]pon information and belief, Ward Pavements'[s] waste streams consisted of construction waste, demolition waste, maintenance waste, office waste[,] and packaging waste, which likely contained hazardous substances such as acetone, benzene, cadmium, chromium, copper, dichloroethylene, lead, methyl ethyl ketone, methylene chloride, nickel, perchloroethylene, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylenes[,] and/or zinc." (*Id.* ¶ 420.)

As to all Third-Party Defendants, the ATPC alleges that the JDG demanded, by letter, that the Third-Party Defendants pay their equitable shares of response costs pursuant to §§ 107(a) and 113(f)(1) of CERCLA and common law, and that to date, the Third Party Defendants have not paid their equitable shares of Site response costs. (*Id.* ¶¶ 33–34, 58–59, 264–65, 276–77, 336–37, 348–49, 362–63, 421–22.)

B. Procedural History

On January 14, 2011, the State of New York and the Commissioner of NYSDEC (collectively "Plaintiffs") commenced an action pursuant to §§ 107 and 113 of CERCLA, 42 U.S.C. §§ 9607 and 9613, state law, and common law against the entities, including the Town and members of the JDG, that "owned or operated the Site and/or generated and/or transported hazardous substances that were disposed of at the Site." (Compl. ¶¶ 1, 15–39 (Dkt. No. 1).) Plaintiffs sought "recovery of over $20 million in past and future response costs incurred by the State in response to the release and threatened release of hazardous substances into the environment at and from the Site, and . . . a declaration of each Defendant's liability for future response costs, natural resource damages, enforcement costs and interest, and oversight costs that the State has incurred and may incur." (*Id.* ¶ 1.) Plaintiffs filed an Amended Complaint on January 26, 2011. (Dkt. No. 3.)

As noted above, on March 21, 2011, Plaintiffs, the Town, the JDG, and several of the JDG's assignors entered into a Consent Decree.  (Consent Decree (Dkt. No. 4).)  The Consent Decree provides that "the . . . JDG (on behalf of its individual members and all other Settling Defendants at that point in time) shall remit to the State" three payments totaling $4,000,000 that "shall constitute the total monetary contribution to be made by the Settling Defendants in full settlement of [the] matter."  (*Id.* ¶ 4.)  As to contribution claims, the Consent Decree states that:

> The Parties agree, and by entering this Decree the Court finds, that the Settling Defendants and the Town . . . have resolved their liability, including but not limited to liability under CERCLA, to the State and are entitled to the full extent of protection from contribution actions or claims as provided by Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2) . . . for the Matters Addressed by this Decree (as specified in Paragraph 9 of this Decree).  Once entered, the Parties further agree, and by entering this Decree the Court finds, that this Decree shall constitute a judicially approved settlement for purposes of Section 113(f)(3)(B) of CERCLA, 42 U.S.C. § 9613(f)(3)(B), and that the Settling Defendants are entitled to seek cost recovery and/or contribution under Sections 107 and/or 113 of CERCLA, 42 U.S.C. §§ 9607 and/or 9613, to the extent provided by law, as well as under state or common law, from any person except those who are entitled to contribution protection under Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2).

(*Id.* ¶ 13.)  Paragraph 9 of the Consent Decree, describing "claims collectively . . . referred to as 'Matters Addressed'" provides that:

> Except as specifically reserved in Paragraphs 8 and 12 of this Decree, the State, pursuant to its authority under Sections 104 and 107 of CERCLA, 42 U.S.C. §§ 9604 and 9607, the ECL[,] and common law, is resolving against Settling Defendants and the Town, and the Settling Defendants and the Town are resolving against each other and against the State (a) any and all claims, including but not limited to federal claims under CERCLA, and state claims under the ECL and common law, for response costs, past and/or future, that have been incurred and/or will be incurred for the investigation and remediation of the Site, no matter when or by whom incurred, including any and all response costs incurred by any party to this action, (b) any and all claims for any natural resource damages at or associated with the Site, and (c) any and all other claims or causes of action under any federal, state, local[,] or common law relating to the disposal or alleged disposal of waste materials, including hazardous substances, or any alleged contamination relating to the disposal or alleged disposal of waste materials, including hazardous substances, at the Site.

(*Id.* ¶ 9.)  Paragraph 8, describing the "Reopener," states, in part, that:

> [T]he State reserves . . . the right to institute proceedings, or to issue an administrative order seeking to compel the Town and/or the Settling Defendants listed in Appendix A hereto: (a) to perform further response actions relating to the Site, or (b) to reimburse the State of additional costs of response, but in either case only if: (i) conditions at the Site previously unknown to the State are discovered after the Effective Date, or (ii) information, in whole or in part previously unknown to the State is received after the Effective Date, and these previously unknown conditions or information . . . indicate[] that the response measures selected for the Site are not protective of human health or the environment.

(*Id.* ¶ 8.)[5]  The Reopener does not apply to the Settling Defendants listed in Appendix B of the Consent Decree.  (*Id.*)  Finally, Paragraph 12 provides that "Matters Addressed do not include, and the State reserves all of its rights with regard to, the State's right to bring any action or proceeding against any person, firm, corporation, or other entity other than the Settling Defendants and the Town."  (*Id.* ¶ 12.)

On January 23, 2012, the First Modification to the Consent Decree was entered, which added several more entities as settling defendants not subject to the Reopener, and which reduced the amount the JDG and its assignors, but not including the Town, were required to pay the State under the Consent Decree from $4,000,000 to $3,750,000.  (Dkt. No. 11.)  The Consent

---

[5] The members of the JDG that are listed in Appendix A, and therefore subject to the Reopener are: Barr Laboratories, Inc., Chromalloy New York, Division of Chromalloy Gas Turbine Corporation, Clarkstown Central School District, County Asphalt, Inc., County of Rockland Highway Department, Evonik Degussa Corporation as successor to Dynamit Nobel of America, Fisher Scientific Company LLC, Ford Motor Company, Gannett Satellite Information Network, Inc., d/b/a/ The Journal News, International Paper Company, Metal Improvement Company LLC (f/k/a Metal Improvement Company, Inc.), Momentive Specialty Chemicals, Inc. (f/d/a Boden Chemical, Inc.), Nyack Hospital, Orange and Rockland Utilities, Inc., Pfizer Inc. for itself and its subsidiaries including, without limitation, Wyeth Holding Corporation acting through Wyeth Pharmaceuticals (Lederle Laboratories), Rockland County Sewer District No. 1, Sanitary Waste Carriers, Inc., Town of Orangetown, New York, United Water New Jersey Inc., United Water New York Inc., Waste Management of New York, LLC and Marangi Bros., Inc, and Wikoff Color Corporation.

Decree was modified three additional times on February 11, 2014, April 4, 2014, and March 18, 2015, to add more settling defendants not subject to the Reopener.  (Dkt. Nos. 256, 285, 473.)

The JDG filed the original Third-Party Complaint on August 5, 2013.  (Dkt. No. 18.)  On November 14, 2013, Third-Party Plaintiffs filed the ATPC.  (Dkt. No. 97.)  Miele Sanitation filed its Answer to the ATPC on December 3, 2013, (Dkt. No. 111), Aalborg filed its Answer to the ATPC on December 5, 2013, (Dkt. No. 123), Opticon filed its Answer to the ATPC on December 23, 2013, (Dkt. No. 191), and Ward Pavements filed its Answer to the ATPC on January 15, 2014, (Dkt. No. 208).

Pursuant to a Scheduling Order signed by the Court on February 25, 2014, (Dkt. No. 263), Third-Party Defendants filed their Motion To Dismiss and supporting papers on April 22, 2014.  (Dkt. Nos. 289–91.)  Because several Movants have filed Answers to the ATPC, their motion is for a judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c).  Several Movants seek dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  Third-Party Plaintiffs submitted their Memorandum of Law in Opposition to the Motion To Dismiss on May 22, 2014, (Dkt. No. 300), and Third-Party Defendants filed their replies and a supporting declaration as to Opticon on June 23, 2014, (Dkt. Nos. 314–316).  The Court heard oral argument on January 8, 2015.

## II.  Discussion

### A.  Applicable Law

#### 1.  Standard of Review

"The standard of review on a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is the same standard of review applied to a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)."  *Marte v. Safety Bldg. Cleaning Corp.*,

No. 08-CV-1233, 2009 WL 2827976, at *1 (S.D.N.Y. Sept. 2, 2009).  The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the 'grounds' of his [or her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (citations omitted).  Instead, the Court has emphasized that "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, and that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563.  A plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.  But if a plaintiff has "not nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))).

For the purposes of Movants' Motion To Dismiss, the Court is required to consider as true the factual allegations contained in the Complaint.  *See Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) ("We review de novo a district court's dismissal of a complaint pursuant to Rule 12(b)(6), accepting all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor." (internal quotation marks omitted)); *Gonzalez v. Caballero*, 572 F. Supp. 2d 463, 466 (S.D.N.Y. 2008) (same).  In deciding a motion to dismiss,

"a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted) (applying standard to a Rule 12(b)(6) motion); *see also Smith v. City of New York*, No. 13-CV-2395, 2014 WL 490557, at *3 (E.D.N.Y. Sept. 30, 2014) ("When deciding a motion on the pleadings, the court must confine its consideration to the pleadings and their attachments, to documents . . . incorporated in the complaint by reference, and to matters of which judicial notice may be taken" (alteration in original) (internal quotation marks omitted)).

## 2.  CERCLA

"Congress enacted CERCLA, 42 U.S.C. §§ 9601 et seq., to address the cleanup of hazardous waste by imposing strict liability for necessary cleanup costs incurred that are 'consistent with the national contingency plan.'" *N.Y. State Elec. & Gas Corp. v. FirstEnergy Corp.*, 766 F.3d 212, 220 (2d Cir. 2014) (quoting 42 U.S.C. § 9607(a)(4)(B)). "CERCLA's primary purposes are axiomatic: (1) to encourage the timely cleanup of hazardous waste sites; and (2) to place the cost of that cleanup on those responsible for creating or maintaining the hazardous condition." *Price Trucking Corp. v. Norampac Indus., Inc.*, 748 F.3d 75, 79 (2d Cir. 2014) (internal quotation marks omitted). "As a remedial statute, CERCLA should be construed liberally to give effect to its purposes." *See B.F. Goodrich v. Betkoski*, 99 F.3d 505, 514 (2d Cir. 1996), *overruled on other grounds by New York v. Nat'l Serv. Indus., Inc.*, 352 F.3d 682, 685 (2d Cir. 2003) (internal quotation marks omitted); *see also First Energy Corp.*, 766 F.3d at 220 (same).

"CERCLA imposes liability for response costs incurred both by the government and

private parties." *Price Trucking Corp.*, 748 F.3d at 80 (citing 42 U.S.C. § 9607(a)(4)(A)-(B)).  A

prima facie CERCLA claim requires the plaintiff to plead that "(1) [the] defendant fits one of the

four classes of responsible parties outlined in § [107(a), 42 U.S.C. § 9607(a)]; (2) the site is a

facility; (3) there is a release or threatened release of hazardous substances at the facility; (4) the

plaintiff incurred costs responding to the release or threatened release; and (5) the costs and

response actions conform to the National Contingency Plan." *B.F. Goodrich Co. v. Murtha*, 958

F.2d 1192, 1198 (2d Cir. 1992); *see also Fitzgibbons v. City of Oswego*, No. 10-CV-1038, 2011

WL 6218208, at *7 (N.D.N.Y. Dec. 13, 2011) (same).  For the purposes of the first prong, four

classes of "potentially responsible parties" ("PRPs") exist under CERCLA: "(1) present owners

and operators of facilities that accepted hazardous substances for transport; (2) past owners and

operators of such facilities; (3) generators of hazardous substances; and (4) certain transporters

of hazardous substances." *FirstEnergy*, 766 F.3d at 220 (citing 42 U.S.C. § 9607(a)) (internal

quotation marks omitted); *see also Pfohl Bros. Landfill Site Steering Comm. v. Allied Waste Sys.,*

*Inc.*, 255 F. Supp. 2d 134, 148 (W.D.N.Y. 2003) (same).  These PRPs "are held strictly liable for

a broad range of remediation expenses, including all costs of removal of the substances not

inconsistent with the national contingency plan, other necessary response costs, damages for

injury to natural resources, and the cost of health assessments." *Pfohl Brothers*, 255 F. Supp. 2d

at 148 (internal quotation marks omitted).

  "Private parties who engage in cleanup activity can recover costs associated with such

actions by bringing claims under either Section 107(a) or Section 113(f) of CERCLA against

[PRPs]." *FirstEnergy Corp.*, 766 F.3d at 220.  As relevant here, "§ 113 provides two express

avenues for contribution: § 113(f)(1) (during or following specified civil actions) and

§ 113(f)(3)(B) (after an administrative or judicially approved settlement that resolves liability to

the United States or a State)." *Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 167 (2004); *see also New York v. West Side Corp.*, 790 F. Supp. 2d 13, 20 (E.D.N.Y. 2011) (same). Specifically, § 113(f)(1) provides that "[a]ny person may seek contribution from any other person who is liable or potentially liable under [§ 107(a) of CERCLA] during or following any civil action under [§ 106] of CERCLA] or under [§ 107(a) of CERCLA]." 42 U.S.C. § 9613(f)(1); *accord Cooper Indus., Inc.*, 543 U.S. at 162–63; *FirstEnergy Corp.*, 766 F.3d at 220. Under § 113(f)(3)(B), a "person who has resolved its liability to the United States or a state for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement may seek contribution from any person who is not party to a settlement." 42 U.S.C. § 9613(f)(3)(B); *see also Niagra Mohawk Power Corp. v. Chevron U.S.A., Inc.*, 596 F.3d 112, 121, 124 (2d Cir. 2010).

For the purposes of § 113(f)(3)(B), consent orders between private parties and the NYSDEC may "qualify[y] as an administrative or judicially approved settlement under § 113(f)(3)(B)." *Niagra Mohawk*, 596 F.3d at 127. A party is entitled to seek contribution under § 113(f)(3)(B), however, "only when liability for CERCLA claims, rather than some broader category of legal claims is resolved." *W.R. Grace & Co.-Conn. v. Zotos Intern., Inc.*, 559 F.3d 85, 90 (2d Cir. 2009) (internal quotation marks omitted); *see also Chitayat v. Vanderbilt Assocs.*, 702 F. Supp. 2d 69, 79 (E.D.N.Y. 2010) (same). Accordingly, "the operative question in deciding whether [a plaintiff's] claims arise under section 113(f)(3)(B) . . . is whether [a plaintiff] resolved its CERCLA liability before bringing suit." *W.R. Grace*, 559 F.3d at 90–91 (internal quotation marks omitted).

"CERCLA section 113(g)(2) requires a district court to 'enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to

recover further response costs or damages.'" *New York v. Solvent Chemical Co. Inc.*, 664 F.3d 22, 25 (2d Cir. 2011) (quoting 42 U.S.C. § 9613(g)(2)).  The Second Circuit has noted that "[o]ddly, the wording of section 113(g)(2) limits its application to [a]n initial action for recovery of the costs referred to in [CERCLA § 107], i.e, not section 113(f)." *Id.* (italics and internal quotation marks omitted).  Accordingly, it is not clear whether § 113(g)(2)'s "mandatory wording (on entry of a declaratory judgment for future liability) applies to § 113(f) contribution actions." *Id.*  At the very least, however, a district court may grant declaratory relief under § 113(f) by considering the factors that apply under the Declaratory Judgment Act, 28 U.S.C. § 2201(a).  *See id; cf. HLD Props., LLC v. Consolidated Edison Co. of N.Y., Inc.*, No. 14-CV-1383, 2014 WL 6604741, at *9 (S.D.N.Y. Nov. 21, 2014) (noting that "CERCLA expressly directs entry of a declaratory judgment for future costs under CERCLA" and denying the defendant's motion to dismiss the claim for declaratory relief in conjunction with claims under CERCLA §§ 107 and 113).

B.  Analysis

1.  Contribution Claim Under § 113(f)

a.  Consent Order as a Judicially Approved Settlement

Movants first argue that Third-Party Plaintiffs fail to state a claim for contribution under CERCLA because they cannot satisfy the requirements under § 113(f)(3)(B), as the JDG has not resolved its CERCLA liability.  (Third-Party Defs.' Mem. of Law in Supp. of Mot. To Dismiss ("Movants' Mem.") 6–7 (Dkt. No. 291).)  The Court disagrees.

As discussed above, "[p]rivate parties who engage in cleanup activity can recover costs associated with such actions by bringing claims under . . . section 113(f) of CERCLA against [PRPs]."  *FirstEnergy Corp.*, 766 F.3d at 220.  Here, members of the JDG have sufficiently pled

that they may recover contribution costs pursuant to § 113(f)(3)(B).  Section 113(f)(3)(B)

provides that a party "who has resolved its liability to the United States or a State for some or all

of a response action or for some or all of the costs of such action in an administrative or

judicially approved settlement may seek contribution from any person who is not party to a

settlement."  42 U.S.C. § 9613(f)(3)(B).  The ATPC alleges that the JDG "[has] resolved [its]

liability to the State of New York for matters covered in the underlying action."  (ATPC ¶ 435.)

     Consent orders between private parties and the NYSDEC may "qualif[y] as an

administrative or judicially approved settlement under § 113(f)(3)(B)," *Niagra Mohawk*, 596

F.3d at 127 (internal quotation marks omitted), as long as "liability for CERCLA claims, rather

than some broader category of legal claims is resolved," *W.R. Grace & Co.-Conn.*, 559 F.3d at

90 (internal quotation marks omitted).  Here, the Consent Decree explicitly provides that the

JDG resolves its CERCLA liability.  (*See* Consent Decree ¶ 9.)  Accordingly, this is not a case

where the Consent Decree "ma[kes] no reference to CERCLA, and establishe[s] that the

[NYS]DEC settled only its state law claims against the [JDG], leaving open the possibility that

the [NYS]DEC or the EPA could, at some future point, assert CERCLA or other claims."

*Niagra Mohawk*, 596 F.3d at 125 (alterations and internal quotation marks omitted) (quoting

*W.R. Grace & Co.-Conn.*, 559 F.3d at 91).  Rather, like the consent order at issue in *Niagra*

*Mohawk Power Corporation v. Chevron U.S.A., Inc.*, the Consent Decree here "specifically

release[s] [the JDG] from CERCLA liability."  *Id.*  Moreover, it provides that by entering into

the Consent Decree, the members of the JDG "are entitled to the full extent of protection from

contribution actions or claims as provided by Section 113(f)(2) of CERCLA,"[6] that the Consent

---

[6] Section 113(f)(2) of CERCLA provides:
    A person who has resolved its liability to the United States or a State in an
    administrative or judicially approved settlement shall not be liable for claims for

Decree "shall constitute a judicially approved settlement for purposes of Section 113(f)(3)(B) of CERCLA" and that "the Settling Defendants are entitled to seek cost recovery and/or contribution" under CERCLA. (Consent Decree ¶ 13.) *See Niagra Mohawk*, 596 F.3d at 126 (explaining that once [the PRP] completed the Consent Order responsibilities, [it] was deemed to have resolved its liability to the State for purposes of contribution protection provided by CERCLA [§] 113(f)(2) and thus was entitled to seek contribution" (internal quotation marks omitted)); *see also HLP Props., LLC*, 2014 WL 6604741, at *5 (holding that '[b]ecause the [agreement] expressly entitles [the] [plaintiffs to a resolution of liability under CERCLA, it is by its own terms an administrative settlement pursuant to § 113" (internal quotation marks omitted)). The JDG, therefore, "resolved its CERCLA liability before bringing suit" against Movants and is entitled to contribution under § 113(f)(B)(3). *W.R. Grace & Co.-Conn.*, 559 F.3d at 90–91 (internal quotation marks omitted).

The Court notes that the Reopener leaves open the possibility for future litigation against certain members of the JDG "to perform further response actions relating to the Site, or . . . to reimburse the State for additional costs of response" under certain conditions. (Consent Decree ¶ 8.) Nevertheless, the Court finds no reason to preclude Third-Party Plaintiffs from seeking contribution to the extent that at least some, if not most, of their CERCLA liability has been resolved by the Consent Decree. The Consent Decree resolves the JDG's liability with regard to the "Matters Addressed" and provides the JDG with contribution protection for those matters. *See Hobart Corp. v. Waste Mgmt. of Ohio, Inc.* 758 F.3d 757, 771 (6th Cir. 2014) (holding that

---

> contribution regarding matters addressed in the settlement. Such settlement does not discharge any of the other potentially liable persons unless its terms so provide, but it reduces the potential liability of the others by the amount of the settlement.

42 U.S.C. § 9613(f)(2).

an agreement that "resolved at least some of [the PRP's] liability with the government" constituted an administrative settlement within the meaning of § 113(f)(3)(B) because, among other things, it gave the PRP "contribution protection").  Moreover, the mere contingency that the State may institute further proceedings if "conditions at the Site previously unknown to the State are discovered after the Effective Date, or . . . information, in whole or in part previously unknown to the State is received after the Effective Date that indicates that the response measures selected for the Site are not protective of human health or the environment," (Consent Decree ¶ 8) does not preclude the JDG from seeking contribution as to the expenses it has already reimbursed Plaintiffs for cleanup and other costs at the Site.  *Cf. Chitayat*, 702 F. Supp. 2d at 81 (rejecting argument that because the consent order "[did] not offer [the PRP] a present release from liability[,] but rather the release [was] contingent upon years of [c]ompliance with the [c]onsent [o]rder" it was not a "judicially approved settlement under § 113(f)(3)(B)" (internal quotation marks omitted)).  Accordingly, for the "Matters Addressed," the Consent Decree resolves the JDG's liability, thus triggering the statutory requirement for contribution under § 113(f)(3)(B).[7]

### b.  Movants as PRPs

Movants next complain that Third-Party Plaintiffs fail to adequately plead facts to support that Movants are PRPs under CERCLA.  (Movants' Mem. 7–33.)  As discussed above, a

---

[7] Third-Party Defendants also argue that the JDG is not entitled to contribution costs under § 113(f)(1), which provides that "[a]ny person may seek contribution from any other person who is liable or potentially liable under [section 107(a) of CERCLA] during or following any civil action under [§ 106 of CERCLA] or under [§ 9607(a) of CERCLA]."  42 U.S.C. § 9613(f)(1).  (*See* Movants' Mem. 33–36.)  At oral argument, Third-Party Plaintiffs' counsel made clear that they were not seeking relief under § 113(f)(1), but rather under § 113(f)(3)(B).  Accordingly, the Court does not consider whether the JDG is entitled to bring a contribution claim pursuant to § 113(f)(1).

prima facie CERCLA claim requires the plaintiff to plead that "(1) [the] defendant fits one of the four classes of responsible parties outlined in § [107(a)]; (2) the site is a facility; (3) there is a release or threatened release of hazardous substances at the facility; (4) the plaintiff incurred costs responding to the release or threatened release; and (5) the costs and response actions conform to the National Contingency Plan." *Murtha*, 958 F.2d at 1198. Movants do not contest that Third-Party Plaintiffs satisfy the second through fifth prongs of a contribution claim. Instead, Movants dispute that they are PRPs, and therefore contend that the JDG cannot satisfy the first prong of their § 113(f) claim for the reasons that follow.

### i. Arguments Applicable to All Movants

As an initial matter, Movants argue that "it is unclear in the JDG's allegations in which category or categories of PRP that the Movants are to be classified, if any." (Movants' Mem. 7.) The ATPC alleges, however, that Aalborg, Balfour Beatty, Opticon, and Tappan Wire "generated waste streams containing hazardous substances that were disposed of at the Site," (ATPC ¶¶ 30, 55, 273, 359); that Miele Sanitation, "an entity who used the Site to dispose of waste," "selected the Site for disposal, and . . . transported and disposed of waste streams containing hazardous substances at the Site," (ATPC ¶¶ 261–62); that Schultz Ford Lincoln, "generated waste streams containing hazardous substances that were disposed of at the Site by Miele Sanitation," (ATPC ¶ 332); that Star Kay White "generated waste streams containing hazardous substances that were disposed of at the Site by Round Lake Sanitation," (ATPC ¶ 344); and that Ward Pavements "selected the Site for disposal, and . . . transported and disposed of waste streams containing hazardous substances at the Site; and/or . . . generated waste streams containing hazardous substances that were disposed of at the Site," (ATPC ¶ 418). Allegations that Movants are "generators of hazardous substances," as those made against

Aalborg, Balfour Beatty, Opticon, Star Kay White, Schultz Ford Lincoln, Tappan Wire, and

Ward Pavements make clear that those Movants may qualify as generators or arrangers under

§ 107(a)(3), and allegations against Miele Sanitation and Ward Pavements that they

"transported" waste to the Site make clear that those Movants may qualify as "certain

transporters of hazardous substances" under § 107(a)(4).  *See FirstEnergy*, 766 F.3d at 220

(citing 42 U.S.C. § 9607(a)).  Moreover, CERCLA's "broad reach extends liability to all those

contributing to—from generation through disposal—the problems caused by hazardous

substances."  *Murtha*, 958 F.2d at 1198; *see also Fitzgibbons v. City of Oswego*, No.

10-CV-1038, 2011 WL 6218208, at *7 (N.D.N.Y. Dec. 13, 2011) (same).

　　Next, Movants argue that Third-Party Plaintiffs fail to sufficiently plead that they are

"arrangers" under § 9607(a)(3) because the "ATPC neither alleges any relevant dates of the

arrangement, nor alleges any affirmative or intentional steps taken by any of the Movants to

arrange for the disposal of its hazardous waste . . . via 'agreement, contract or otherwise.'"

(Movants' Mem. 11 (quoting 42 U.S.C. § 9607(a)(3)) (some internal quotation marks omitted).)

Furthermore, they point out that the word "arranger" does not appear in the ATPC.  (*Id.*)

　　Section 107(a)(3) of CERCLA provides: "[a]ny person who by contract, agreement, or

otherwise arranged for disposal or treatment, or arranged with a transporter for transport for

disposal or treatment, of hazardous substances owned or possessed by such person, by any other

party or entity, at any facility owned or operated by another party or entity containing

such . . . substances" is liable.  42 U.S.C. § 9607(a)(3).  The Second Circuit has instructed that a

party may establish liability under §§ 107(a)(3)-(4) if that party can show: "(1) there was a

release or threatened release, which (2) caused incurrence of response costs, and (3) that the

defendant generated hazardous waste at the clean-up site."  *United States v. Alcan Aluminum*

24

*Corp.*, 990 F.2d 711, 721 (2d Cir. 1993); *see also FirstEnergy Corp.*, 766 F.3d at 220 (noting

that CERCLA's third class of PRPs is "generators of hazardous substances").  More specifically,

"[u]nder the plain terms of the statute, [defendants] may be liable under § [107(a)(3)] if they: (1)

arranged for the disposal of, (2) hazardous substances, (3) owned or possessed by them."  *United*

*States v. Alliedsignal, Inc.*, 62 F. Supp. 2d 713, 726 (N.D.N.Y. 1999); *see also Mainline*

*Contracting Corp. v. Chopra-Lee, Inc.*, 109 F. Supp. 2d 110, 118 (W.D.N.Y. 2000) (explaining

there are "three elements that must be met before a defendant can be liable under CERCLA as an

arranger[:] . . . [1] the defendant must be a 'person' as defined under CERCLA; [2] the defendant

must 'own' or 'possess' the hazardous substance at issue; and [3] the defendant must, by

contract, agreement, or otherwise, arrange for the transport or disposal of such hazardous

substances").

      Here, Third-Party Plaintiffs allege that Movants owned hazardous substances, as the

ATPC claims that the hazardous substances were contained in the waste streams generated by

their respective businesses.  The Second Circuit has noted that "ownership of hazardous

substance, when combined with actual control over the process that generates the hazardous

waste, supports arranger liability."  *Gen. Elec. Co. v. AAMCO Transmissions, Inc.*, 962 F.2d 281,

287 (2d Cir. 1992).  Movants argue, however, that because the ATPC does not explicitly allege

that they arranged for the disposal of these substances, it is fatally deficient.  Movants point to

the Supreme Court's holding that "an entity may qualify as an arranger under

[§ 107(a)(3)] . . . when it takes intentional steps to dispose of a hazardous substance" to support

their argument that specific steps or actions that PRPs took to dispose of waste must be alleged

for the purposes of arranger liability.  *Burlington N. & Santa Fe Ry. Co. v. United States*, 556

U.S. 599, 611 (2009); *see also W.R. Grace & Co.-Conn. v. Zotos Intern., Inc.*, No. 98-CV-838S,

2013 WL 5488939, at *30 (W.D.N.Y. Sept. 30, 2013) (same). The Supreme Court in *Burlington North*, however, was concerned with the "liability attaching to the many permutations of 'arrangements' that fall between . . . two extremes—cases in which the seller [of a product] has some knowledge of the buyers' planned disposal or whose motives for the 'sale' of a hazardous substances are less than clear." *Burlington*, 556 U.S. at 610. In contrast to the situations that fall "between . . . two extremes," the Court was clear that "[i]f an entity were to enter into a transaction for the sole purpose of discarding a used and no longer useful hazardous substance[,] . . . . [i]t is plain from the language of the statute that CERCLA liability would attach under § [107](a)(3)." *Id.* at 609–10.

The Court acknowledges that, with the exception of transactions alleged between Schultz Ford Lincoln and Miele Sanitation, and Star Kay White and Round Lake Sanitation, the ATPC does not make specific allegations as to an "agreement" or "contract" or any other transaction that Movants made to arrange for the disposal of their waste.[8] Nevertheless, read as a whole, the ATPC alleges that Movants arranged for the disposal of waste at the Site by virtue of the alleged fact that the Site received waste from businesses that operated within a five-mile radius and beyond from the 1950s through the 1990s, and that Movants generated waste that was disposed of at the Site. Given these alleged facts, it is plausible that Movants arranged for the disposal of their waste at the Site so as to qualify them as PRPs under § 9607(a)(3). *See Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 719 (2d Cir. 2013) ("The application of [the] plausibility standard [under *Iqbal*] to

---

[8] The ATPC alleges that "Miele Sanitation transported and disposed of waste from Schultz Ford Mercury at the Site at least three times per week," (ATPC ¶ 334), and that "Round Lake Sanitation transported and disposed of at least two dumpster loads of waste from Star Kay each month at the Site," (*id.* ¶ 346) during the years that the Site was open. Accordingly, as to Schultz Ford Mercury and Star Kay White, the ATPC clearly alleges a relevant time of disposal and a relevant transaction for disposal.

particular cases is context specific and requires assessing the allegations of the complaint as a whole." (citation and internal quotation marks omitted)); *see also Iacovangelo v. Corr. Med. Care, Inc.*, No. 13-CV-6466, 2014 WL 4955366, at *6 (W.D.N.Y. Oct. 2, 2014) (same).

Finally, Movants contend that the ATPC is generally deficient because it contains "*de minimis* assertions setting forth the Movants' presumed operations" and is "vague as to the nature of Movants' waste streams." (Movants' Mem. 9 (internal quotation marks omitted).) Specifically, Movants argue that the ATPC contains "the fatal combination of 'upon information and belief, it is likely . . .' with a paucity of facts, held together with nothing but unabashed speculation," and this language is "far too speculative to establish a plausible claim under the *Twombly* and *Iqbal* standard." (*Id.* at 10.)  There is no "fatal combination," of magic words, however, that makes a complaint deficient.  Rather, the plausibility inquiry is a "context-specific task." *Iqbal*, 556 U.S. at 679; *see also Trustees of Mosaic & Terrazzo Welfare Pension, Annuity, & Vacation Funds v. Continental Floors, Inc.*, No. 13-CV-1739, 2013 WL 5637492, at *6 (E.D.N.Y. Oct. 15, 2013) (same).[9]

---

[9] The cases that Movants cite are not to the contrary.  In *Elan Microelectronics Corp. v. Apple, Inc.*, No. 09-CV-1531, 2009 WL 2972374 (N.D. Cal. Sept. 14, 2009) the court held that a complaint alleging patent infringement "on information and belief that [the defendant] has been and is currently, directly and/or indirectly infringing . . . the specified patents through its design, marketing, manufacture and/or sale of touch sensitive input devices or touchpads, including but not limited to the Smart-Pad," was deficient.  *Id.* at *2 (internal quotation marks omitted).  The court did not, however, base its conclusion on the fact that the complaint used "upon information and belief" and "likely," but, rather on the finding that the "pleading plainly falls within the prohibition against [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* (internal quotation marks omitted).  In *Elan*, the defendant attempted to justify its use of "upon information and belief" based on Rule 11(b)(3) "which defines the implied representations an attorney . . . is deemed to make to the court when presenting any pleading." *Id.* at *3.  The court determined that the defendant was attempting to "avail itself itself of Rule 11(b)(3) where there [were] *no* factual circumstances known to it that would constitute a good reason to believe a claim exists." *Id.* at *4 (internal quotation marks omitted).  The court also made clear that "whether a party has complied with Rule 11(b) and whether it has complied with Rule 8 are two separate inquiries." *Id.*  Unlike in *Elan*, here Third-Party Plaintiffs

Under Federal Rule of Civil Procedure 8, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (alteration in original) (quoting *Twombly*, 550 U.S. at 555); *see also Lefkowitz v. John Wiley & Sons, Inc.*, No. 13-CV-6414, 2014 WL 2619815, at *7 (S.D.N.Y. June 2, 2014) (same). Moreover, the plausibility standard "does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (citation and internal quotation marks omitted); *see also Lefkowitz*, 2014 WL 2619815, at *9 (explaining that "[i]t is . . . of no moment that many of [the] [p]laintiff's allegations are predicated 'upon information and belief'" because "[p]refacing allegations with this standard pleading qualification does not eviscerate the sufficiency of a complaint").

Read as a whole, the ATPC gives Movants "fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson*, 551 U.S. at 93; *see also Cohn v. KeySpan*, 713 F. Supp. 2d 143, 159 (E.D.N.Y. 2010) (holding that "read as a whole, the complaint provides the . . . defendants with fair notice of what [the] plaintiff's claim . . . is and the grounds upon which that  claim rests"). The allegations, taken as true for the purpose of this Motion, *see*

---

do not rely on Rule 11(b)(3) to justify their reliance on pleading "upon information and belief," and the Court considers whether the pleadings satisfy Rule 8.

The second case that Movants cite is similarly unhelpful.  In *Statler v. Dell, Inc.*, 775 F. Supp. 2d 474 (E.D.N.Y. 2011), the court concluded that the plaintiff's "claim to recover for possible safety hazards that have not occurred in the seven years since purchase of his computers [was] not plausible," and because the plaintiff "fail[ed] to plead any damage," he "fail[ed] to state a claim arising from any alleged safety issue." *Id.* at 485.  Here, however, for the JDG has not relied on speculative events that have not yet happened, but, rather, as discussed above has sufficiently pled the elements of a CERCLA claim.

*Ruotolo*, 514 F.3d at 188, that Movants, through their business operations, generated waste streams containing hazardous materials that were disposed of at the Site, state a plausible claim that Movants are PRPs under CERCLA.  As "a plaintiff is not required to plead 'specific evidence or extra facts beyond what is needed to make the claim plausible,'" *Hagood v. Rubin & Rothman, LLC*, No. 14-CV-34, 2014 WL 6473527, at *6 (E.D.N.Y. Nov. 17, 2014) (quoting *Arista Records*, 604 F.3d at 120–21), the Court finds the ATPC sufficient.  Moreover, although the ATPC prefaces what the waste streams consisted of with "upon information and belief," "this standard pleading qualification does not eviscerate the sufficiency of [the] complaint." *Lefkowitz*, 2014 WL 2619815, at *9.  Rather, as the JDG argues, "[m]ovants are in exclusive possession of information and documentation relevant to their operations and waste streams," (Mem. in Opp. to Third-Party Defs.' Motion to Dismiss the Amended Third-Party Complaint ("JDG's Mem.") 13 (Dkt. No. 300)), and accordingly, this is an instance where the "facts are peculiarly within the possession and control of the defendant," *Arista Records*, 604 F.3d at 120; *cf. Jimenez v. City of New York*, No. 14-CV-2994, 2014 WL 5089392, at *6 (S.D.N.Y. Oct. 9, 2014) (holding that "[t]he facts relating to [the] alleged disclosure [that the defendants provided members of the New York Police Department with medical records and other documents] [were] within the possession and control of the defendants, thus pleading upon information and belief is appropriate in this case"); *Cohn*, 713 F. Supp. 2d at 159 (holding that "[w]hether or not any of the . . . defendants receive[d] federal funding is a fact peculiarly within the possession and control of those defendants, which [the] plaintiff is entitled to discern during discovery").

Further, even though the ATPC states that each Movants' waste streams "likely" contained certain hazardous substances, the Court is mindful that "[t]he available evidence of who did what at the relevant site is often dependent on inference," and, accordingly, "there is

nothing objectionable in basing findings solely on circumstantial evidence, especially where," as here, "the passage of time has made direct evidence difficult or impossible to obtain." *Niagra Mohawk*, 596 F.3d at 131 (internal quotation marks omitted).  To the extent that Movants disagree that the alleged waste streams contained the hazardous substances that Third-Party Plaintiffs ascribe to them, these disputes are at the very least premature.  *See id.* at 132 ("Defenses of minimal involvement or limited proof of responsibility do have a role in the CERCLA scheme; they come in to play during the damages phase when the court is charged with equitably apportioning the costs of the cleanup among the PRPs."); *see also APL Co. Pte. Ltd. v. Kemira Water Solutions, Inc.*, 890 F. Supp. 2d 360, 371 (S.D.N.Y. 2012) (holding "the extent to which [the defendant] was at fault and the amount of contribution [the defendant] owes to [the plaintiff] may be limited or it may not—that is a determination for a later time"); *cf. Alcan Aluminum Corp.*, 990 F.2d at 721 ("[I]n addition to imposing a strict liability scheme, CERCLA does away with a causation requirement.").  Accordingly, as to Movants Aalborg, Opticon, Star Kay White, Tappan Wire, and Ward Pavements, that advance only the arguments that the ATPC does not properly plead the category of PRP to which it belongs, fails to sufficiently allege arranger liability, or is deficient for failing to plead sufficient facts about its business's waste streams and the hazardous materials that they contained, the Motion To Dismiss as to the § 113(f) claim is denied.

### ii.  Balfour Beatty

Balfour Beatty claims that the ATPC is deficient as to it because the ATPC contains "conclusory legal allegations . . . devoid of specific facts necessary to establish successor liability and therefore, [is] deficient as a matter of law."  (Movants' Mem. 16.)  The Court agrees.

Although CERCLA does not specifically provide that a successor corporation may be held liable for response costs, the Second Circuit has "held that CERCLA encompasses successor liability," which is governed by federal common law. *New York v. Nat. Serv. Indus., Inc.*, 460 F.3d 201, 206 (2d Cir. 2006) (citing *Nat'l Serv. Indus. Inc.*, 352 F.3d at 683). Under both New York and traditional common law, "a corporation that purchases the assets of another corporation is generally not liable for the seller's liabilities." *Id.* at 209. This general rule, however, is subject to the exceptions that "a buyer of a corporation's assets will be liable as its successor if: (1) it expressly or impliedly assumed the predecessor's tort liability, (2) there was a consolidation or merger of seller and purchaser, (3) the purchasing corporation was a mere continuation of the selling corporation, or (4) the transaction is entered into fraudulently to escape such obligations." *Id.* (internal quotation marks omitted).

To state a claim based on successor liability, a plaintiff must plead enough facts for the Court to infer that one of the exceptions to "the general rule finding that a business entity acquiring the assets from another business generally results in no successor liability." *City of Syracuse v. Loomis Armored US, LLC*, 900 F. Supp. 2d 274, 288 (N.D.N.Y. 2012) (analyzing whether the plaintiff alleged sufficient facts to support its claim that the defendant underwent a de facto merger); *see also Gallo v. Wonderly Co., Inc.*, No. 12-CV-1868, 2014 WL 36628, at *13 (N.D.N.Y. Jan. 6, 2014) (finding "there are sufficient facts to support a continuation of ownership theory" to survive a motion to dismiss because the complaint "alleged, in particular, that [the relevant corporations] have in common several characteristics and traits that infer continuation of ownership"). Here the ATPC fails to allege any facts that support any theory of successor liability. Instead, the ATPC merely states that Balfour Beatty "is the successor to [Cablec], a manufacturer and distributor of electric cable and wire for utilities." (ATPC ¶ 55.)

This allegation, standing alone, is insufficient for the Court to infer that the general rule governing successor liability does not apply. *Cf. Jasper & Black, LLC v. Carolina Pad Co., LLC*, No. 10-CV-3562, 2012 WL 413869, at *8 (S.D.N.Y. Feb. 9, 2012) (finding that because the plaintiff failed "to allege facts sufficient to establish . . . continuity of ownership" as required to plead successor liability under a theory of de facto merger, that the plaintiff "failed to proffer facts sufficient to state plausibly that [the defendant's] purchase of assets from [the relevant company] constituted de facto merger"); *Jalili v. Xanboo Inc.*, No. 11-CV-1200, 2011 WL 4336690, at *4 (S.D.N.Y. Sept. 15, 2011) (holding that the plaintiff's allegation that "[the parent company defendant] is in the process of integrating [its subsidiary's] assets into [the parent company], leading to an actual or de facto merger of [the subsidiary] into [the parent company]" was insufficient to allege successor liability) (italics and internal quotation marks omitted).

Moreover, while Third-Party Plaintiffs state in their opposition papers that they "named Balfour Beatty in the [ATPC] based, in part, upon the admission from Balfour Beatty's counsel that Balfour Beatty is the 'corporate successor' to Cablec," (JDG's Mem. 20), the Court is not aware of any authority that supports the proposition that successor liability may be based on statements made by opposing counsel and outside of the complaint on a motion to dismiss. *Cf. Ortiz v. Green Bull, Inc.*, No. 10-CV-3747, 2011 WL 5554522, at *5 (E.D.N.Y. Nov. 14, 2011) (noting that the court was "not aware[] of any basis upon which the [c]ourt [could] consider statements derived from . . . conversation [between the plaintiff's counsel and the defendant's customer service representatives] in adjudicating a motion to dismiss" and thus declining to consider the conversation in "assessing the sufficiency of the [p]laintiff's claim" of successor liability).

Third-Party Plaintiffs complain that "[d]espite [their] pre-litigation due diligence, it is

very difficult to determine whether Balfour Beatty or BICC Cables Corp. is the successor to Cablec [and] [e]ven Balfour Beatty's own counsel appears to be confused."  (JDG's Mem. 20.) Of course, what a plaintiff "needs to show to ultimately prevail on a [successor liability] claim and what the [p]laintiff must plead to state a claim are two separate inquiries," *Ortiz*, 2011 WL 5554522, at *8.  Moreover, the Court finds it noteworthy that Balfour Beatty fails to argue why it is not subject to successor liability under CERCLA for the purposes of the instant Motion. Nevertheless, Third-Party Plaintiffs must, at the very least, set forth the basis for their conclusory claim that successor liability is appropriate as to Balfour Beatty before the Court may consider allowing Third-Party Plaintiffs to engage in limited discovery on the issue.  *Cf. id.*, at *9–10 (allowing the plaintiff to engage in limited discovery because there had been a plausible allegation of de facto merger based on documents suggesting that the defendant company purchased the assets of the relevant company and the defendant company's website "suggest[ed] some degree of continuity" between the two companies); *Societe Anonyme Dauphitex v. Schoenfelder Corp.*, No. 07-CV-489, 2007 WL 3253592, at *4 (S.D.N.Y. Nov. 2, 2007) (denying motion to dismiss where the defendants conceded that the plaintiffs alleged facts in support of two of the four indicia of de facto[] merger, "namely continuity of ownership and continuity of management, location, assets, and operations").  Accordingly, the claim for contribution against Balfour Beatty is dismissed without prejudice.  Third-Party Plaintiffs may amend the ATPC as to Balfour Beatty to allege facts sufficient to support an inference of successor liability.  *See Oliver Schs., Inc. v. Foley*, 930 F.2d 248, 253 (2d Cir. 1991) ("Where the possibility exists that the defect can be cured and there is no prejudice to the defendant, leave to amend at least once should normally be granted as a matter of course.").

### iii.  Miele Sanitation

Miele Sanitation argues that because all of the entities that it is the alleged "transporter for"—with the exception of Schultz Ford Lincoln—have settled the Third-Party action against them, "Miele Sanitation . . . is protected by the [d]octrine of [r]espondeat [s]uperior," because as it was acting as a transporter, and therefore as a "servant," under the doctrine.  (Movants' Mem. 20–21 (internal quotation marks omitted).)  Miele Sanitation has not identified, and the Court has not found, however, any case where a court granted a motion to dismiss based on the theory that an alleged transporter is acting in the capacity of a servant and, therefore, precluded from incurring liability under the doctrine of respondeat superior.  Accordingly, the Court rejects this argument for the purposes of the instant Motion and, along with the reasons given above, denies the Motion To Dismiss the contribution claim as to Miele Sanitation.

### 2.  Claim for Declaratory Relief Under § 113(g)(2)

Movants argue that the JDG cannot maintain its claim under CERCLA § 113(g)(2) because it is not entitled to relief under CERCLA § 107.  (Movants' Mem. 38.)  Although there is some ambiguity as to whether a district court is required "to enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages'" after an action for recovery of the costs under § 113(f), *Solvent Chemical Co.*, 664 F.3d at 25 (quoting 42 U.S.C. § 9613(g)(2)) (internal quotation marks omitted), the Court may grant declaratory relief after finding a plaintiff is entitled to relief under § 113(f) by considering the factors that apply under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), *see id*.  Accordingly, because the ATPC states a claim as to Aalborg, Miele Sanitation, Opticon, Schultz Ford Lincoln, Star Kay White, Tappan Wire, and Ward Pavements under § 113(f), the Court denies Movants' motion to dismiss the claim under

34

§ 113(g)(2) as to those Movants.  *See HLD Props., LLC*, 2014 WL 6604741, at *9 (noting that

"CERCLA expressly directs entry of a declaratory judgment for future costs under CERCLA"

and denying the defendant's motion to dismiss the plaintiff's claims for declaratory relief in

conjunction with claims under CERCLA §§ 107 and 113).  As the ATPC fails to state a claim for

liability as to Balfour Beatty, the Court grants, without prejudice the Motion To Dismiss as to the

§ 113(g)(2) claim against Balfour Beatty.

<div style="text-align:center">3.  Attorneys' Fees</div>

To the extent that Third-Party Plaintiffs allege a claim for attorneys' fees, that claim is

dismissed.  "Neither CERCLA § 107, the liabilities and defenses provision, nor § 113, which

authorizes contribution claims, expressly mentions the recovery of attorney's fees" and,

accordingly, "expenses incurred solely in preparation for litigation cannot be recovered as

response costs unless they significantly benefited the entire cleanup effort and served a statutory

purpose apart from the reallocation of costs."  *Goodrich Corp. v. Town of Middlebury*, 311 F.3d

154, 174 (2d Cir. 2002) (internal quotation marks omitted); *Durham Mfg. Co. v. Merriam Mfg.*

*Co.*, 294 F. Supp. 2d 251, 278 (D. Conn. 2003) (same).  Because the ATPC does not allege that

attorneys' fees "significantly benefited the entire cleanup effort and served a statutory purpose

apart from the reallocation of costs," there is no plausible claim for attorneys' fees under

CERCLA at this stage.  Accordingly, any claim of attorneys' fees is dismissed, without

prejudice.

<div style="text-align:center">III.  Conclusion</div>

In light of the foregoing analysis, the Court grants in part and denies in part Movants'

Motion To Dismiss the ATPC.  Specifically, as to Balfour Beatty, the ATPC is dismissed

without prejudice in its entirety.  As to Movants Aalborg, Miele Sanitation, Opticon, Schultz

<div style="text-align:center">35</div>

Ford Lincoln, Star Kay White, Tappan Wire, and Ward Pavements the Motion To Dismiss is

denied, except to the extent that the ATPC alleges a claim to attorneys' fees.  Third-Party

Plaintiffs will be given 30 days to file a Second Amended Third-Party Complaint as to Balfour

Beatty.  The Clerk of Court is respectfully requested to terminate the pending Motion.  (Dkt. No.

289.)

SO ORDERED.

DATED:      March 27, 2015
              White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

36